Leona PIPER, as the legal representative of the Estate of Patricia Ann Piper, Petitioner,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–1675V.

United States Court of Federal Claims.

Sept. 23, 1993.

---

Conrad R. Kindsfather, Arvada, CO, attorney of record for plaintiff.

Linda S. Renzi, Torts Branch, Civ. Div., Dept. of Justice, Washington, DC, with whom were attorneys in the Dept. of Justice, and the Asst. Atty. Gen., attorneys of record for defendant.

## OPINION

HORN, Judge.

### BACKGROUND

This case is before the court for review of the decision of the special master entered March 31, 1993. In his decision, Special Master John Edwards[1] found that the petitioner failed to meet the prerequisites for compensation under the terms of the National Vaccine Injury Act, 42 U.S.C. §§ 300aa–1 to 300aa–34 (West 1991) (Vaccine Act).[2] The special master's decision concludes that, based on the record as a whole, petitioner failed to establish, by a preponderance of the evidence, that her daughter Patricia received a DPT vaccination on February 21, 1945. In his decision, he specifically found that "the lay testimony is not reliable" and that petitioner "is not entitled to compensation solely upon the *prima facie* showing of actual causation."

Petitioner filed a motion for review and memorandum of objections to the special master's report, asking for reversal of his decision. Petitioner filed her motion for review within the 30–day time limit required by the Vaccine Act, and is properly before this court.[3] She claims that the

---

1. The case was transferred from Special Master Richard B. Abell to Special Master John F. Edwards on October 13, 1992. This reassignment was made pursuant to Vaccine Rule 3(c). Special Master Edwards presided at the hearing and had the opportunity to review the record thoroughly.

2. Tit. XXI, § 2112, as added Nov. 14, 1986, Pub.L. No. 99–660, tit. III, § 311(a), 100 Stat. 3761; Dec. 22, 1987, Pub.L. No. 100–203, tit. IV, §§ 4303(d)(2)(A), 4307(3), 101 Stat. 1330–222, 1330–224 and amended Dec. 22, 1987, Pub.L. No. 100–203, tit. IV, §§ 4303(d)(2)(A), 4307(3),

101 Stat. 1330–222, 1330–224, Pub.L. No. 100–203, tit. IV, §§ 4307(3)(C), 4308, as amended and added July 1, 1988, Pub.L. No. 100–360, tit. IV, § 411(o)(2), (3)(A), 102 Stat. 808; Dec. 19, 1989, Pub.L. No. 101–239, tit. VI, § 6601(d)–(i), 103 Stat. 2286–2290; Nov. 3, 1990, Pub.L. No. 101–502, § 5(b), 104 Stat. 1286; Nov. 26, 1991, Pub.L. No. 102–168, tit. II, § 201, 105 Stat. 1102; Oct. 27, 1992, Pub.L. No. 102–531, tit. III, § 314, 106 Stat. 3508.

3. The Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992), enacted on October 29, 1992, changed the name

special master committed reversible error, applied an incorrect burden of proof and that the decision is arbitrary and capricious and contrary to the weight of the evidence. Respondent opposes petitioner's motion for review, arguing that the special master's application of the preponderance of the evidence standard is in accordance with the law and that the special master's decision was neither arbitrary nor capricious.

Petitioner first filed a claim for compensation under the Vaccine Act on September 27, 1990. Leona Piper alleged that her daughter had a hypotonic-hyporesponsive collapse as a result of a diphtheria-pertussis-tetanus (DPT) vaccination allegedly administered on February 21, 1945, and that her death on February 22, 1945 was a sequela of that injury. Special Master Edwards held a hearing on December 15, 1992, in Denver, Colorado. Leona Piper, Mrs. Rose Coffey (sister-in-law to Mrs. Piper), Mr. James Darman (a family friend), and Les Breitman, M.D., testified on behalf of the petitioner. Arnold Gale, M.D., testified for respondent. The special master issued his decision on March 31, 1993. *Piper v. Sec'y DHHS*, No. 90–1675V (Fed.Cl. Spec.Mstr., March 31, 1993).

After careful consideration of the motions and memoranda filed by both parties, and for the reasons discussed below, the court AFFIRMS the decision of the special master and DENIES petitioner's motion to set aside that decision.

### FACTS

Patricia Ann Piper was born on August 23, 1944, at St. Anthony's Hospital in Denver, Colorado. There were no complications during pregnancy, or with the delivery. Patricia appears to have been a healthy baby, suffering only from one or two colds and one episode of emesis. Mrs. Piper testified that on February 21, 1945, she took Patricia to a military medical clinic at Klamath Falls, Oregon, where Mr. Fred Piper, the father, was stationed in the Marines. Mrs. Piper further testified that during that visit Patricia was administered a DPT vaccination. Although the petitioner appears to have taken reasonable steps to acquire available medical records, there are no contemporaneous medical records of either an examination or of a vaccination. The contemporaneous medical records appear to have been destroyed. Petitioner did present evidence that the records of the Oregon Medical Examiner Section, which deals with unexpected or traumatic deaths in Oregon, are usually destroyed after 25 years. The only records submitted to the court for Patricia are a Birth Certificate, Records of Pregnancy Care and Birth from St. Anthony's Hospital, and a Death Certificate.

According to petitioner, on February 22, 1945, at roughly 8:30 in the morning, Patricia was found dead in her crib by her mother. The Death Certificate identifies accidental suffocation by aspiration of food as the cause of death. Mrs. Piper stated that she found Patricia on her stomach, and that she felt cold to the touch. Autopsy records also appear to have been destroyed. Mrs. Piper could not recall many details about either February 21, 1945 or February 22, 1945.

### DISCUSSION

Compensation under the Vaccine Act is determined pursuant to the guidelines of the National Vaccine Injury Compensation Program (Program). Under the Program, a petitioner, in this case the legal representative of the deceased, is entitled to compensation if the petitioner can show by a preponderance of the evidence that the case presented meets multiple criteria specified in the Vaccine Act. The first criteria requires that the person suffering the injury have received one of the vaccines listed in the Vaccine Injury Table (Table),[4] or if such person did not receive such a vaccine,

---

of the United States Claims Court to the United States Court of Federal Claims. The United States Court of Federal Claims is the successor to the United States Claims Court in all respects, including the application of Appendix J to the Rules of the court, which govern suits initiated

under the Vaccine Act. *See* this court's General Order No. 33.

**4.** The Vaccine Injury Table appears at 42 U.S.C. § 300aa–14.

contracted polio from another person who received oral polio vaccine. 42 U.S.C. § 300aa–11(c)(1)(A). Under the Vaccine Act, hypotonic-hyporesponsive collapse is associated with DPT as a Table injury, for which death may be a sequela. 42 U.S.C. § 300aa–14(a)(I)(C). Second, the individual suffering the injury must have received the vaccine in the United States or in its trust territories, 42 U.S.C. § 300aa–11(c)(1)(B)(i)(I), or received the vaccine outside the United States or a trust territory and at the time of the vaccination such person was a citizen of the United States serving abroad as a member of the Armed Forces, or otherwise as an employee of the United States or a dependent of such a citizen, 42 U.S.C. § 300aa–11(c)(1)(B)(i)(II), or received the vaccine outside the United States or a trust territory and the vaccine was manufactured by a vaccine manufacturer located in the United States and such person returned to the United States not later than 6 months after the date of the vaccination, 42 U.S.C. § 300aa–11(c)(1)(B)(i)(III). Third, the person must have sustained or suffered significant aggravation of any illness, disability, injury, or condition set forth in the Vaccine Injury Table, or died from the administration of such vaccine, and that the first symptom or manifestation of the injury or the death must have occurred within the time period after vaccine administration set forth in the Vaccine Injury Table.[5] 42 U.S.C. § 300aa–11(c)(1)(C)(i). Fourth, the injured person must have suffered the effects or complication of the alleged illness or injury for more than six months after the administration of the vaccine and must have incurred unreimbursable related expenses in excess of $1,000, or died from the administration of the vaccine. 42 U.S.C. §§ 300aa–11(c)(1)(D)(i) & 300aa–11(c)(1)(D)(ii). The fifth and last criteria requires that the petitioner has not collected an award or settlement for damages for such vaccine-related injury or death previously. 42 U.S.C. § 300aa–11(c)(1)(E).

The Vaccine Act requires that a petitioner prove each and every element of the claim by a preponderance of the evidence. 42 U.S.C. § 300aa–13(a)(1)(A). A petitioner is eligible for compensation only if the special master finds, based on the record as a whole, that the petitioner has demonstrated by a preponderance of the evidence the above requirements, and that there is not a preponderance of the evidence that the illness, injury or death is due to factors unrelated to the administration of the vaccine. 42 U.S.C. § 300aa–13(a)(1)(B). The special master may not make a finding for the petitioner based on the claims of a petitioner alone, unsubstantiated by medical records or medical opinion. 42 U.S.C. § 300aa–13(a)(1).

The preponderance of the evidence standard applied in civil litigation, and used by the special master, was discussed in a concurring opinion by Justice Harlan in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). As explained, a trier of fact must believe that the existence of fact is more probable than its nonexistence before finding for the party who has the burden to persuade the judge of the fact's existence. The special master, therefore, properly considered whether the existence of a fact that is a prerequisite for recovery, was "more probable than its nonexistence." *In re Winship*, 397 U.S. at 371, 90 S.Ct. at 1076.

As originally enacted, the Vaccine Act provided for *de novo* review of the factual findings of the special master by the judges of the United States Claims Court. *Donovan v. Sec'y DHHS*, 28 Fed.Cl. 459, 462 (1993) (citing *Davis v. Sec'y DHHS*, 19 Cl.Ct. 134, 140–41 (1989)); *see also Bradley v. Sec'y DHHS*, 991 F.2d 1570, 1577 (Fed. Cir.1993) (Plager, J., concurring in part and dissenting in part). Congress, however, amended the Vaccine Act in 1989, to restrict review by the judges of the court, now called the United States Court of Fed-

---

**5.** It is also possible to recover compensation under the Program if the injured person sustained an injury not listed in the Vaccine Injury Table, but which was caused by a listed vaccine; or if the injured person sustained an injury the first symptom of which did not occur within the time period set forth in the Table, but which was caused by a listed vaccine. 42 U.S.C. §§ 300aa–11(c)(1)(C)(ii)(I) & 300aa–11(c)(1)(C)(ii)(II).

eral Claims, consistent with the arbitrary and capricious standard. 42 U.S.C. § 300aa–12(e)(2) (Supp. I 1989); *see Donovan v. Sec'y DHHS*, 28 Fed.Cl. at 462; *Hale v. Sec'y DHHS*, 22 Cl.Ct. 403, 415 (1991).

Currently, according to the Vaccine Act, when a motion to review a special master's decision is filed pursuant to 42 U.S.C. § 300aa–12(e)(2), the judges of the United States Court of Federal Claims may:

2) Upon the filing of a motion under paragraph (1) with respect to a petition, the United States Claims Court shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter—

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or,

(C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa–12(e)(2). With only minor word differences, Vaccine Rule 27 of the Court of Federal Claims repeats these same statutory directives.

The language of both the Vaccine Act and the Vaccine Rules is clear that decisions of a special master may only be set aside by a judge of the Court of Federal Claims if the decision of the special master was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 42 U.S.C. § 300aa–12(e)(2)(B); RCFC, app. J, Rule 27(b).[6] In establishing the role of the special masters in their 1989 Amendments to the Vaccine Act, the Congress made apparent its desire to make the re-

view of a special master's decision an extraordinary event:

The conference agreement provides for an appeal of the master's decision to the U.S. Claims Court under very limited circumstances. If such a motion for review is filed within the applicable time limits, the Court is then to decide to do one of three things: It may uphold the master's decision; it may set aside any part of the master's decision that is arbitrary capricious, an abuse of discretion, or otherwise not in accordance with law, and may issue its own findings and conclusions, or it may remand the petition for further proceedings by the master.... The Conferees have provided for a limited standard for appeal from the master's decision and do not intend that this procedure be used frequently but rather in those cases in which a truly arbitrary decision has been made.

H.R.Conf.Rep. No. 386. 101st Cong., 1st. Sess., at 516–517, *reprinted in* 1989 U.S.Code Cong. & Admin.News 1906, 3119–3120. The developing case law also supports application of the arbitrary and capricious, abuse of discretion or not in accordance with law standard of review. *Cucuras v. Sec'y of DHHS*, 993 F.2d 1525, 1527 (Fed.Cir.1993); *Hines v. Sec'y DHHS*, 940 F.2d 1518, 1523–24 (Fed.Cir.1991); *Gamache v. Sec'y DHHS*, 27 Fed.Cl. 639, 643 (1993); *Lonergan v. Sec'y DHHS*, 27 Fed. Cl. 579, 579–80 (1993); *Perez v. Sec'y DHHS*, 27 Fed.Cl. 200, 201 (1992) (*citing Stotts v. Sec'y DHHS*, 23 Cl.Ct. 352, 358–61 (1991)).

■ The arbitrary and capricious standard of review is a narrow one. *Johnston v. Sec'y DHHS*, 22 Cl.Ct. 75, 76 (1990). *See Cucuras v. Sec'y DHHS*, 993 F.2d at 1527; *Estate of Arrowood v. Sec'y DHHS*, 28 Fed.Cl. 453, 457 (1993); *Bradley v. Sec'y DHHS*, 991 F.2d at 1574; *Perreria v. Sec'y DHHS*, 27 Fed.Cl. 29, 32 (1992). When applying the arbitrary and capricious standard, a reviewing court is not empowered

---

**6.** Nevertheless, to the extent that this court deems such review necessary, it is empowered to set aside the findings of fact and conclusions of law of the special master and issue its own findings of fact and conclusions, 42 U.S.C.

§ 300aa–12(e)(2)(B), or alternatively to remand the petition to the special master for further action in accordance with the court's direction. 42 U.S.C. § 300aa–12(e)(2)(C).

to substitute its own judgment for that of a previous trier of fact. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). Instead, in determining whether a decision was arbitrary and capricious, a court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* Furthermore, "[i]f the special master has considered the relevant evidence in the record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines v. Sec'y DHHS,* 940 F.2d 1518, 1528 (Fed.Cir.1991). *See Lewis v. Sec'y DHHS,* 26 Cl.Ct. 233, 236 (1992); *Murphy v. Sec'y DHHS,* 23 Cl.Ct. 726, 729–30 (1991). Thus, the decision of a special master may be found to be arbitrary and capricious only if the special master:

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence ... or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Hines,* 940 F.2d at 1527 (quoting *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

Moreover, according deference to the special master's decision requires that the reviewing court "may not substitute its own judgment for that of the special master if the special master has considered all relevant factors, and has made no clear error of judgment." *Lonergan v. Sec'y DHHS,* 27 Fed.Cl. at 579–80; *Perez,* 27 Fed.Cl. at 201 (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971); *Hyundai Elecs. Indus. Co. v. United States Int'l Trade Comm'n,* 899 F.2d 1204, 1209 (Fed.Cir.1990); *Gamalski v. Sec'y DHHS,* 21 Cl.Ct. 450, 451–52 (1990)).

■ Therefore, when reviewing the decision of a special master, judges of the Court of Federal Claims should only over-turn the special master's decision if the Secretary of the Department of Health and Human Services can demonstrate that the special master acted arbitrarily, capriciously, abused his/her discretion, or acted otherwise not in accordance with the law. As pointed out by the United States Court of Appeals for the Federal Circuit in *Hines v. Sec'y DHHS,* however, no "uniform" definition of the arbitrary and capricious standard has emerged. In *Hines,* the court offered, as a guidance, a wide variety of examples in which the arbitrary and capricious standard was applied:

> "an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983) (review of agency rulemaking); agency must articulate a satisfactory explanation for its action including a "rational connection between the facts made and the choice made," *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962) (review of agency adjudication); "proof that there was 'no reasonable basis' for the administrative decision will also suffice [to show arbitrary and capricious conduct], at least in many situations," *Prineville Sawmill Co., Inc. v. United States,* 859 F.2d 905, 913 (Fed. Cir.1988) (quoting *Keco Ind., Inc. v. United States,* 492 F.2d 1200, 1203–04, 203 Ct.Cl. 566 (1974)) (review of pre-award bid protest action against letting of government contract); reviewing court must "guard against an agency's drawing inferences that are 'arbitrary' in relation to the facts found, no matter how substantial may be the support for those facts," *Midtec Paper Corp. v. United States,* 857 F.2d 1487, 1498

(D.C.Cir.1988) (review of agency adjudication); "the central focus of the arbitrary and capricious standard is on the rationality of the agency's 'decisionmaking,' rather than its actual decision," *United States v. Garner*, 767 F.2d 104, 116 (5th Cir.1985); "whether the decision was based on a consideration of relevant factors, whether there has been a clear error of judgment and whether there is a rational basis for the conclusions ...," *Mobil Oil Corp. v. Department of Energy*, 610 F.2d 796, 801 (Temp.Emer. Ct.App.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980) (review of agency rulemaking) (quoting *Texaco, Inc. v. Federal Energy Admin.*, 531 F.2d 1071, 1076–77 (Temp.Emer.Ct. App.1976)).

*Hines v. Sec'y DHHS*, 940 F.2d at 1527–28.

Distinguished from scrutiny of findings of fact questions under the arbitrary and capricious standard are questions of statutory construction. These generally should be reviewed under the "not in accordance with law" standard. *Estate of Arrowood v. Sec'y DHHS*, 28 Fed.Cl. at 457. Moreover, the circuit court has held that legal conclusions are to be reviewed by the appellate court *de novo*. *Bradley v. Sec'y DHHS*, 991 F.2d at 1574 n. 3. *See also Powers v. Commissioner*, 312 U.S. 259, 260, 61 S.Ct. 509, 510, 85 L.Ed. 817 (1941); *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 825 (Fed.Cir.1992). As the appellate court stated in *Munn v. Sec'y DHHS*, "Issues of law—constitutional imperatives, statutory construction, procedural requirements—come to us [the Court of Appeals for the Federal Circuit] for decision with little deference, if any, owed to or expected by the forums below." *Munn v. Sec'y DHHS*, 970 F.2d 863, 870 (Fed.Cir. 1992).

This court declines to adopt the standard applied by at least one of its colleagues (in *Ultimo v. Sec'y DHHS*, 28 Fed.Cl. 148 (1993)), that *de novo* review of legal conclusions is not appropriate and that legal conclusions of the special master in vaccine cases should also be reviewed by the arbitrary and capricious, or abuse of discretion

standard. Unlike instances when a trier of fact makes factual findings, for which credibility determinations and evaluation of the weight of the evidence are critical, review of statutory construction appears to this judge to require *de novo* review.

The assigned judge of the United States Court of Federal Claims should conduct a *de novo* review of the proper statutory construction, and if appropriate, resort to the legislative history, to reach its own conclusions regarding the meaning of the statute. Indeed, the accepted rules of statutory construction direct that the first review of a statute should look to obtaining an understanding of the "plain meaning" of the words of the statute as written by the legislature. The plain meaning of words are discernable without the necessity of deferring to another's interpretation of those words. In essence, the court agrees with the Court of Appeals for the Federal Circuit that the standards of review vary depending on which aspect of the case is being reviewed.

> These standards vary in application as well as degree of deference. Each standard applies to a different aspect of the judgment. Fact findings are reviewed by us, as by the Claims Court judge, under the arbitrary and capricious standard; legal questions under the 'not in accordance with law' standard; and discretionary rulings under the abuse of discretion standard. The latter will rarely come into play except where the special master excludes evidence.

*Munn v. Sec'y DHHS*, 970 F.2d at 870 n. 10.

This court, of course, will take what it views as its responsibilities to review decisions of the special master seriously and address both legal and factual issues when raised, while applying the differing, applicable standards of review. The court notes, however, that the recent decision in *Bradley v. Sec'y DHHS*, 991 F.2d 1570 (Fed.Cir.1993), has raised serious questions regarding the function of a judge of the Court of Federal Claims when reviewing a special master's decision, especially when it is then appealed to the United States Court

of Appeals for the Federal Circuit. The issue is particularly acute regarding whether or not the Court of Appeals for the Federal Circuit will also conduct a *de novo* review of the factual, as well as the legal issues in the case, and in effect disregard the work of the judges of the Court of Federal Claims. As indicated previously by this court in *Wells v. United States*, this judge finds it difficult to believe that the appellate court wishes to undertake *de novo* review even of the factual findings of the special master (*see also Donovan v. Sec'y DHHS*, 28 Fed.Cl. 459 (1993)), relegating this court to the role, under certain circumstances, of nothing more than a ministerial rubber stamp, akin to a required step along the path of necessary exhaustion of remedies. Such, nonetheless, appears to be one of the possible results of the *Bradley* language. To facilitate obtaining more specific guidance from the appellate court, this court offers the following recitation of what it believes is the current state of the law.

The Vaccine Act provides in pertinent part:

> The findings of fact and conclusions of law of the United States Claims Court on a petition shall be final determinations of the matters involved, except that the Secretary or any petitioner aggrieved by the findings or conclusions of the court may obtain review of the judgment of the court in the United States court of appeals for the Federal Circuit upon petition filed within 60 days of the date of the judgment with such court of appeals within 60 days of the date of entry of the United States Claims Court's judgment with such court of appeals.

42 U.S.C. § 300aa–12(f).

The issues were addressed some years ago by the Court of Appeals for the Federal Circuit in *Hines v. Sec'y of DHHS*. In *Hines*, the court wrote:

> Our precedent shows a consistent pattern which provides us with clear guidance in the instant situation. Like a decision of the Claims Court or the Court of International Trade sustaining an agency decision as not arbitrary and ca-

pricious, and like a determination by a district court that a special master's decision is not clearly erroneous, a Claims Court vaccine decision upholding a special master must be viewed as a *legal* conclusion that the master's decision was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....' 42 U.S.C. § 300aa–12(e)(2)(B). We therefore hold that in a case arising under the 1989 amendments to the Vaccine Act, we review *de novo* the Claims Court determination as to whether or not the special master's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. In effect, then, we review the underlying decision of the special master under the arbitrary and capricious standard of 300aa–12(e)(2)(B) [citation omitted].

*Hines v. Sec'y DHHS*, 940 F.2d at 1524.

Subsequently, in *Munn v. Sec'y DHHS*, 970 F.2d 863, 870 (Fed.Cir.1992), the language of a footnote to the opinion seems to contradict the direction in *Hines*, and suggest that the Federal Circuit should review the judgment of the Claims Court under an arbitrary and capricious standard. The *Munn* court stated: "The effect of this [42 U.S.C. § 300aa–12(e)(2)] is to give the special master's determinations decisional effect, and to place the Claims Court in the role of a reviewing judge." In *Munn*, which has been extensively referred to in subsequent decisions, the Court of Appeals for the Federal Circuit wrote:

> Close attention to the statute tells us several important things. First, no appeal is provided to this court from the decision of the special master. It is only the Claims Court that is subject review here. Second, it is only the final *judgment* of the Claims Court that we review. We know ... that the statute contemplates that fact finding will be done only by the special master. Only in extraordinary cases will the Claims Court undertake to do any independent fact finding. *In arriving at its judgment, the only time the Claims Court can make its own findings of fact is*

*when that court as a matter of law, has concluded that the special master was 'arbitrary and capricious' ...* [emphasis added] and that it is necessary for the Claims Court to substitute its own findings of fact. Absent that, there are no separate findings of fact.

This much is clear. Under the 1989 amendments it is the judgment of the Claims Court that we review directly, and only indirectly the decision of the special master. Issues of law—constitutional imperatives, statutory construction, procedural requirements—come to us for decision with little if any deference owed to or expected by the forums below. With regard to both fact-findings and fact based conclusions, the key decision maker in the first instance is the special master. The Claims Court owes these findings and conclusions by the special master great deference—no change may be made absent first a determination that the special master was 'arbitrary and capricious.' This is a standard well understood to be the most deferential possible. [Citations omitted.]

When a case comes before us in which the Claims Court has upheld the findings and conclusions of the special master against a charge that they were arbitrary and capricious, and the Claims Court has rendered judgment accordingly, it follows that the Claims Court judgment is entitled to at least the same deference by us as that accorded the special master by the Claims Court. That is, we may not disturb the judgment of the Claims Court unless we find that judgment to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. This standard is consistent with and elaborates upon the standard for review of post–1989 vaccine compensation cases first enunciated in *Hines*. ... Any other standard would create an anomalous situation, one in which the affirming decision (the claims court judgment) was more readily overturned than the original decision (that of the special master).

*Munn v. Sec'y DHHS*, 970 F.2d at 870–71.

The Federal Circuit further seemed to endorse the *Munn* reasoning in *Phillips v.*

*Sec'y DHHS*, 988 F.2d 111, 112 (Fed.Cir. 1993):

As we explained at length in *Munn* (citation omitted), we do not then simply redo what has already been done. We do not retry the case, as has already been done by the special master; we do not review the special master's decision, as has already been done by the judge of the Court of Federal Claims. The statute mandates that we review the judgment of the Court of Federal Claims in the case. As we explained in *Munn*, in a case in which the Court of Federal Claims affirms the special master that means we determine, again under a highly deferential standard with regard to the fact issues, whether the Court of Federal Claims erred in its affirmance of the special master's decision.

*Phillips v. Sec'y DHHS*, 988 F.2d 111, 112 (Fed.Cir.1993).

The role assigned to the Court of Federal Claims described in the *Munn* and *Phillips* decisions by the Court of Appeals for the Federal Circuit, however, seems to be contradicted by the more recent Federal Circuit language included in the majority opinion in *Bradley v. Sec'y DHHS*, 991 F.2d 1570 (Fed.Cir.1993), although the *Bradley* court tried to show its consistency with *Munn:*

The determination of whether fact finding was arbitrary and capricious, we have held, is a legal conclusion, *Munn*, 970 F.2d at 870 ("the only time the Claims Court can make its own findings of fact is when that court, *as a matter of law*, has concluded that the special master was 'arbitrary and capricious' ") (emphasis added; *Hines* at 1524 ("a Claims Court vaccine decision upholding a special master must be viewed as a *legal* conclusion that the master's decision was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....' "). *Cf.* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2524 at 541–42 (1971) ("Whether the evidence is suffi-

cient to create an issue of fact for the jury is solely a question of law to be determined by the court. The standard in passing on that question is the same ... in the trial court and on appeal.") *Legal conclusions are, of course, always reviewed de novo. See, e.g., Powers v. Commissioner of Internal Revenue*, 312 U.S. 259, 260, 61 S.Ct. 509, 510, 85 L.Ed. 817 (1941); *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 825 (Fed.Cir.1992). [Emphasis added]. The concurrence, however, seemingly would square the standard of review: we would decide whether the Claims Court judge was arbitrary and capricious when he decided whether the special master was arbitrary and capricious. Such compounded deference would constitute a new, Vaccine Act, precedent, or elsewhere. *When the Claims Court upholds all of the findings of the special master, there are no findings by the Claims Court.* 42 U.S.C. § 300aa–12(e)(2)(A). *Thus if findings are challenged on appeal, we must review the findings of the special master.* [Emphasis added.] As the Vaccine Act explicitly demands, those findings are reviewed under an arbitrary and capricious standard. 42 U.S.C. § 300aa–12(e)(2)(B).

*Bradley v. Sec'y DHHS*, 991 F.2d at 1574 n. 3 (emphasis added).

In *Bradley* the Federal Circuit commented on the *Phillips* holding, asserting that the *Phillips* court misread *Munn:*

> In another recent vaccine compensation case, *Phillips* (citations omitted) this court relies on language in *Munn* (citations omitted) to suggest review of the Claims Court judgment under a less rigorous standard than *de novo*. The *Phillips* opinion's implied interpretation of Munn is untenable for three reasons. First, it contravenes the holding in *Hines* ... a prior precedent of this court. Second the *Munn* language to which the *Phillips* court appears to refer (the opinion cites no specific page or portion) is merely *dicta* because *Munn* never specifically applied any other standard of review than *de novo* to any Claims Court

legal conclusions: "Petitioner has not shown that the decision of the Claims Court was *incorrect with regard to matters of law*, or that the judgment of the Claims Court was otherwise in error under any applicable standard of review." 970 F.2d at 874 (emphasis added). Third, the *Phillips* court's interpretation of *Munn* is inconsistent with the Vaccine Act and the holding in *Munn* itself. Elsewhere, *Munn* clearly states "that the Claims Court's *judgment* is entitled to at least the same deference by us as that accorded the special master by the Claims Court." *Id.* at 870. When, as in *Munn* and *Phillips* the Claims Court upholds all of the special master's findings and conclusions, the Claims Court "judgment [is entered] in accordance with the special master's decision" 42 U.S.C. § 300aa–12(e)(3). Thus, the "judgment" is reviewed with respect to its bases—the *special master's* findings and conclusions—which are reviewed under the arbitrary and capricious standard per 42 U.S.C. § 300aa–12(e)(2)(B). The Claims Court "decision" (opinion) may be helpful in identifying the relevant findings of the special master that are challenged by the petitioner, but we actually review the judgment and its supporting findings, rather than the "decision," as *Phillips* appears to suggest.

*Bradley v. Sec'y DHHS*, 991 F.2d at 1576 n. 4.

In *Bradley* there was also a concurrence, in part, and a dissent, in part, which took issue with the reasoning employed by the *Bradley* majority, and advanced the reasoning and language employed by the *Munn* court, as follows:

> The question about which we differ is simply this: who do we review and by what standard. In two lengthy textual footnotes ... the majority tells us its answer, which at bottom seems to be that the standard is a 'legal' conclusion that we review '*de novo*,' and from that all else appears to follow automatically. But saying something is 'legal' hardly defines the universe of possible consequences—a fact determined to be such

'as a matter of law' and therefore presumably 'legal' does not thereby become less of a fact.... After first doing it differently, Congress determined that fact finding and fact concluding were to be done by a group of specialists called Special Masters, under the overall supervision of the Claims Court, now the Court of Federal Claims (CFC). The responsibility originally assigned to CFC judges for making these factual determinations was taken away. *See id.* § 300aa–12(d)(1) (Supp V.1987) and Congress left them instead with a limited appellate review role, and with orders to apply a highly deferential legal standard to the review of the special masters' fact determinations. *See id.* § 300aa–12(e)(2). In *Munn,* this court reviewed at length this history and concluded that our own review role must be equally if not more constrained. The statute directs that we 'review the judgment of the [C]ourt [of Federal Claims]'—the judgment that court reaches after its review of the special master.... We agreed we would review that judgment on the same highly deferential standard that that court must apply to the special masters. I understand this to mean that we look at the judgment of the CFC, we read the judge's opinion in support of that judgment, and with regard to fact-based determinations, we defer absent a clear showing that something went badly awry.

The majority opinion in this case is based on a quite different approach. The special master's fact determinations come in for extensive review and discussion, and while they are ultimately upheld, the court makes clear that this is only because we find them acceptable. (The work of the CFC is mentioned occasionally in passing.) The majority believes it is our duty to do a second time what the statute has specifically assigned to the judges of the CFC: review the fact-based findings and conclusions of the special masters, and decide whether they should be upheld.

*Bradley v. Sec'y DHHS,* 991 F.2d at 1576–77. Subsequent decisions issued by the United States Court of Appeals for the Federal Circuit do not resolve the questions left open by these apparently contradictory holdings regarding the scope of review to be afforded decisions issued by judges of the Court of Federal Claims which review the decisions of the special masters in vaccine cases. In *Cucuras v. Sec'y DHHS,* the Federal Circuit cited *Bradley* and *Hines* in its decision:

> The Court of Federal Claims may reverse a special master's findings and conclusions only in the face of arbitrary, capricious, or unlawful decision. 42 U.S.C. § 300aa–12(e)(2). This court reviews the Court of Federal Claims determination under this highly deferential standard *de novo* (emphasis in original).

*Cucuras v. Sec'y DHHS,* 993 F.2d at 1527.

The Court of Federal Claims judges also are struggling to understand the current state of the law. In *Donovan v. Sec'y DHHS,* 28 Fed.Cl. 459, the court wrote:

> Congress amended the Vaccine Act to restrict the Court of Federal Claims' consistent with the arbitrary and capricious standard. 42 U.S.C.A. § 300aa–12(e)(2). [Citation omitted.] This development regularized the review consistent with judicial review of other factfinders. This solution posed a problem on appeals, recently addressed at length in *Bradley....* The conundrum presented is whether appellate court review of a Court of Federal Claims judgment is *de novo,* which devolves to reviewing the decision of a special master directly to see whether it was arbitrary and capricious, or whether the review is bases on the arbitrary and capricious standard. This seemingly semantic distinction is of significant practical import to the fisc, on the one hand, and to the Court of Federal Claims on the other. The interests of the taxpayer are implicated, because the taxpayer is paying for petitioners' judicial review through the appellate process. It is altogether unprecedented that Congress would fashion an appeals system that encourages successive redundant judicial review, while providing a mechanism for reimbursing the attorneys' fees

of private parties employing that process....

It is the court's duty to carry out faithfully the dictates of Congress, and no one has suggested that the court has been less than scrupulous in adhering to the requirements of the Vaccine Act. As the concurring and dissenting opinion in *Bradley* makes clear, however, the effect of the current appellate review is to duplicate the task assigned to the Court of Federal Claims. In other words, the appellate court re-reviews all the work of the special master that has been reviewed by the Court of Federal Claims in order to determine whether the judgment of the Court of Federal Claims should stand. Whether Congress intended this precise result can be debated, as *Bradley* dramatizes. Nonetheless, it is a fact that this result obtains at present and results in an obvious duplication of judicial resources.

*Donovan v. Sec'y DHHS*, 28 Fed.Cl. at 462.

In another recent decision, *Estate of Arrowood v. Sec'y DHHS*, the court indicated:

CAFC decisions reflect ambiguity as to the standard of review in that court of a decision by the Court of Federal Claims on questions of law. *See Bradley* (*de novo* review of a Court of Federal Claims decision). (Citation omitted.) *Munn v. Secretary of Dep't of Health & Human Services*, (citation omitted) (judgment of the Court of Federal Claims may not be disturbed "unless we find that judgment to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

*Estate of Arrowood v. Sec'y DHHS*, 28 Fed.Cl. at 457 n. 3.

In sum, the decisions issued to date by the Court of Appeals for the Federal Circuit leave unanswered many issues regarding the role of the judges of the Court of Federal Claims in vaccine cases. In *Bradley*, the Circuit Court has spoken specifically only to the situation in which the Court of Federal Claims upholds the special master's factual findings and makes no additional findings of fact. Although left without much dignity, at least the path in this record is clear. Because there appear to be no more recent articulations by the United States Court of Appeals for the Federal Circuit on the issues raised in *Bradley*, remaining unresolved is the nature of review in the equally important, non-*Bradley* scenarios, including what should occur when the judge makes his/her own additional findings of fact in accordance with 42 U.S.C. § 300aa–12(e)(2)(B). Judicial resources being as scarce as they are, this court needs guidance as to the level of effort to be expended on vaccine cases by judges of the United States Court of Federal Claims.

Nonetheless, without clear direction at this time, this court will undertake to review the objection filed by the respondent in the instant case to the decision of the special master, and will treat this case with the same attention as if the confusion regarding the scope of appellate review did not exist. In the case at bar, the special master concluded that petitioner was unable to show, by a preponderance of the evidence, that Patricia Piper had received a DPT vaccination on February 21, 1945. Having found that the petitioner failed to meet this burden, the special master did not find it necessary to further evaluate the merits of the petitioner's case. The decision by the special master that the petitioner had not provided sufficient demonstration of the administration of a DPT vaccination to the victim, and his concomitant decision not to reach the merits of the case, were proper, given the statutory framework and the record presented. The statute clearly requires that a person who suffered a vaccine injury must demonstrate that the shot was administered, 42 U.S.C. § 300aa–11(c)(1)(A), and then "*if* such person received a vaccine ...," 42 U.S.C. § 300aa–11(c)(1)(B) (emphasis added), the special master should proceed to apply the remaining criteria by which a petitioner can establish entitlement to compensation. The record before the court does not establish, by a preponderance of the evidence, that Patricia Piper, in fact, received a DPT vaccination on February 21, 1945. Having failed to establish this first element of her

claim, petitioner is not eligible to recover under the Vaccine Act.

The only evidence petitioner can present that Patricia received a DPT shot on February 21, 1945 is her own testimony that the shot was administered and the testimony of Mrs. Coffey and Mr. Darman that they remember the parents, Fred and Leona Piper, informing them that Patricia died as a result of a shot. There are no medical records in the materials presented to the special master to establish that Patricia received a DPT vaccination on February 21, 1945. The Vaccine Act clearly states that the special master may not find for the petitioner based on the claims of a petitioner alone, unsubstantiated by medical records or medical opinion. 42 U.S.C. § 300aa–13(a)(1).

The lack of medical, documentary proof of a vaccination, however, does not necessarily bar recovery. In *Woodson v. Sec'y DHHS*, No. 91–263V, 1992 WL 59707 (Cl. Ct.Spec.Mstr., Mar. 5, 1992), although the special master found the evidence presented weak, he held that the absence of any documentary evidence did not require that he dismiss the case as a matter of law on summary judgment. The special master in *Woodson* held that unsupported parental testimony should be weighed in the context of the entire record. In *Brown v. Sec'y DHHS*, 18 Cl.Ct. 834 (1989), *rev'd on other grounds*, 920 F.2d 918 (1990) (reversed regarding damages), the court found that the cumulative evidence presented in the case, including the testimony of a credible parent, especially when supported by the parent's personal calendar entry and the administering physician's billing statement for immunization services rendered to a well child, were sufficient to establish vaccine administration, by a preponderance of the evidence, even in the absence of medical records. Similarly, in *Wonish v. Sec'y DHHS*, No. 90–667V, 1991 WL 83959 (Cl. Ct.Spec.Mstr., May 6, 1991), a special master held for a petitioner in the absence of any medical records proving a precise vaccination date, finding that "highly credible" parental testimony, corroborated by medical records which refer back to a DPT shot

were sufficient to establish a case under the Vaccine Table. Likewise, in *Alger v. Sec'y DHHS*, No. 89–31V, 1990 WL 293408 (Ct.Cl.Spec.Mstr., March 14, 1990), the testimony of the parent, together with that of the doctor who administered the vaccine, who had personal knowledge that the vaccination had occurred, was found to be sufficient.

■ The special master in the case before the court had the responsibility to weigh testimony presented regarding administration of the vaccine, which in the instant case was unsupported by documentary evidence. In the context of the entire record, Special Master Edwards concluded that the testimony of Mrs. Piper, as supported by Rose Coffey and James Darman, was unpersuasive and unreliable. To this effect, he wrote in his decision:

> The special master had an ample opportunity to question Mrs. Piper, observe her demeanor and asses her credibility at the hearing. The special master listened intently also to Mrs. Coffey's testimony and Mr. Darman's testimony. The special master has reviewed thoroughly the transcript of the proceedings. He determines that, on the record as a whole, the lay testimony was not cogent and compelling. Indeed, the testimony was of such poor quality that the special master cannot consider the testimony to be reliable.

*Piper v. Sec'y DHHS*, No. 90–1675V at 4 (Fed.Cl.Spec.Mstr., March 31, 1993).

The special master particularly remarked regarding Mrs. Piper's testimony:

> Mrs. Piper claimed that Patricia received a DPT vaccination on February 21, 1945. Tr. at 12–13. Mrs. Piper stated that Patricia died on February 22, 1945. Tr. at 12–14. Yet, Mrs. Piper could not recall many details about February 21–22, 1945. *See generally* Tr. at 12–32. In the special master's view, the sum of Mrs. Piper's testimony provides little basis for him to conclude that it is more

likely than not that Patricia received a DPT vaccination as Mrs. Piper testified. *Id.*

Based on a close reading of the transcript and of the entire record, this court concludes that the special master did not commit reversible error in finding that petitioner had failed to show, by a preponderance of the evidence, that Patricia Piper had received a DPT shot on February 21, 1945. While the absence of records in the instant case is not due to any lack of diligence on the part of the petitioner, the Vaccine Act provides that compensation may not be awarded based on a petitioner's claims alone, unsubstantiated by medical records or medical opinion. 42 U.S.C. § 300aa–13(a)(1). The only contemporaneous medical document relating to the vaccination, illness, or death of Patricia Piper is her death certificate, dated February 22, 1945. This certificate is silent as to the administration of any vaccine, and, moreover, lists the cause of death as accidental aspiration of food. The testimony of Mrs. Piper, Mrs. Coffey, and Mr. Darman provided little basis for the finder of fact to determine that it is more likely than not that Patricia received a DPT vaccination on February 21, 1945. Mrs. Piper was unable to recall many details regarding the day of the vaccination and the day Patricia died, including the day of the week Patricia was vaccinated, whether a nurse or a doctor administered the vaccination, what the clinic administering the vaccination was like, what she did after the vaccination, whether Patricia suffered any swelling or redness after receiving the vaccination, whether Patricia made any noises during the night before she died, what exact time she found Patricia dead in her crib, and whether she tried to revive Patricia. Similarly, in assessing the testimony of Mrs. Coffey and Mr. Darman, the special master concluded that neither witness "recalled events or conversations clearly and with certainty" and found that their testimony was "dubious" and "lends no support to Mrs. Piper's claim" *Piper*, No. 90–1675V (Fed.Cl. Spec.Mstr., March 31, 1993) at 4. In fact, the special master wrote in his opinion "... [o]n the record as a whole, the lay testimo-

ny was not cogent or compelling. Indeed, the testimony was of such poor quality that the special master cannot consider the testimony to be reliable."

■ Although the events in question occurred more than 45 years ago, the statute assigns to the special master the task of assessing the credibility of witnesses's recollections of the events which occurred. *See Thrall v. Sec'y DHHS*, 26 Cl.Ct. 1419, 1424 (1992). The Federal Circuit has held that "[t]he determination of the credibility of the witnesses is within the discretion of the presiding official who heard their testimony and saw their demeanor." *Griessenauer v. Dept. of Energy*, 754 F.2d 361, 364 (Fed.Cir.1985). Furthermore, "these determinations are virtually unreviewable." *Hambsch v. Dept. of Treasury*, 796 F.2d 430, 436 (Fed.Cir.1986). This principle has been applied to cases arising under the Vaccine Act: "[a]ssessments of credibility are uniquely within the purview of the trier of fact and the reviewing courts must give appropriate deference to the trier's conclusion." *Richardson v. Sec'y DHHS*, 23 Cl. Ct. 674, 678 (1991).

In her motion for review, petitioner argues that the special master applied an incorrect evidentiary standard, imposing a heightened burden of proof upon her claim. Petitioner argues that because the special master cited to a criminal case, *In re Winship*, 397 U.S. 358, 371, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368, to define what is meant by "preponderance of the evidence," the special master applied a criminal standard of proof—proof beyond a reasonable doubt— in weighing the evidence. However, in *Winship*, the Supreme Court considered whether to apply a "beyond a reasonable doubt" standard or a "preponderance of the evidence" standard to a juvenile charged with criminal misconduct. Moreover, Justice Harlan, from whose concurring opinion the special master drew his definition of "preponderance of the evidence," clearly addressed these two competing standards and indicated the appropriate nature of the "preponderance of the evidence" standard to civil cases. More-

over, the special master referenced and applied only the preponderance of the evidence standard in reaching his conclusions. The special master wrote:

> In order for the estate to be entitled to an award, petitioner ... must show by the preponderance of the evidence that the deceased received a vaccination covered by the Act.... The preponderance of the evidence standard requires the special master to determine that the existence of a fact is more probable than not.

*Piper,* No. 90–1675V (Fed.Cl.Spec.Mstr., March 31, 1993) at 2, *citing, In re Winship,* 397 U.S. at 371, 90 S.Ct. at 1076. Petitioner's argument that the special master applied anything other than the preponderance of the evidence standard is, thus, without merit.

■ Petitioner also argues that the standard which should have been applied is not the "preponderance of the evidence" standard, but a "substantial evidence" standard, on the grounds that there are no records contrary to petitioner's testimony, and that she presented credible evidence. The petitioner cites to *Chiles v. Bowen,* 695 F.Supp. 357 (S.D.Ohio 1988), in support of her argument, and quotes the case at length:

> the preponderance of the evidence standard necessarily involves the consideration of the evidence both in support of and contrary to a proposition and the weighing of each to determine which represents the preponderance; this standard requires that all the evidence be examined in relation to the other to determine the balance. The substantial evidence standard, however, focuses only on the evidence in support of a position or ruling and does not require any comparison or weighing; this standard only requires only that the evidence offered in favor of

a party is such that a reasonable person might accept it as adequate regardless of the type or quantity of evidence submitted in opposition to it. The substantial evidence standard does not require the balancing of conflicting evidence, as does the preponderance of the evidence standard, but is a different standard which requires a different approach and may result in an easier threshold for the party offering the evidence to prove an issue of fact.

*Chiles v. Bowen,* 695 F.Supp. 357, 360 (S.D.Ohio, 1988) (emphasis in original).[7]

The petitioner relies upon *Chiles* to advance the proposition that since the record and the special master's decision contain no documentary evidence that a DPT shot was not given to Patricia on February 21, 1945, then the special master need not weigh the two sides, but should apply a substantial evidence standard. Petitioner again advances the same evidence she put forward at the hearing before the special master and argues that this body of evidence meets the substantial evidence test. Petitioner's argument must be rejected under the plain language of the Vaccine Act. Pursuant to the Vaccine Act, compensation will be awarded only if the special master finds on the record as a whole that the petitioner has demonstrated, by a preponderance of the evidence, all of the required elements of a claim identified in the Vaccine Act. 42 U.S.C. § 300aa–13(a)(1)(A). Furthermore, courts have explicitly rejected the application of a substantial evidence standard to cases arising under the Vaccine Act:

> Nuances of 'substantial evidence' developed in judicial review of contract disputes have no place in the [Vaccine] Program. Attempts to graft such 'substantial evidence' concepts to Program proce-

---

7. *Chiles* is not an analogous case to the instant case. In *Chiles* a claimant sought to recover benefits from the Social Security Administration and needed to prove employment of a certain duration. In that case the judge applied a relevant Social Security ruling which read in part:

> In the absence of any entry on an individuals earnings record for any period, the evidence

needed to prove alleged wages on his earnings record must, in any event, be substantial and of probative value and clearly establish both the amount of wages paid and the time of such payment.

*Chiles v. Bowen,* 695 F.Supp. 357, 359 (S.D.Ohio, 1988) (quoting Social Security Ruling 62–11 [November 1961–August 1962 Transfer Binder] Unempl.Ins.Rep. (CCH) 14,195 (1962)).

dures is contrary to the objectives of the Vaccine Compensation Program.

*Estate of Arrowood v. Sec'y DHHS*, 28 Fed.Cl. at 453. Also, as pointed out above, 42 U.S.C. § 300aa–13(a)(1) states that the court may not make an award "based on the claims of a petitioner alone unsubstantiated by medical records or by medical opinions."

The petitioner further argues that the decision of the special master violates the will of Congress. Petitioner asserts that since Congress made a decision not to set a retroactive statute of limitations when it passed the Vaccine Act, and since Congress has passed laws allowing medical records to be destroyed 25 years after a death, Congress implicitly recognized that old cases arising under the Act should bear a less stringent standard of evidence than more recent cases. Petitioner writes in her motion to review:

> Congress in choosing not to [set a retroactive statute of limitations] must have been aware that the losses that were suffered by parents or children leave scars forever and that it was not fair to preclude recovery just because one had a reaction or death as a result of a vaccine many years ago.

This court is sympathetic to the loss suffered by Mrs. Piper, but neither Congress nor the special master has precluded recovery under the Vaccine Act because this case is old. Recovery was denied in this case because the petitioner could not demonstrate, in the record presented as a whole, by a preponderance of the evidence, that Patricia received a DPT vaccination on February 21, 1945 resulting in her death on February 22, 1945. Recovery is not precluded in cases arising from injuries or deaths taking place many years ago, but neither is the standard of evidence made less stringent for cases on the grounds that they are old. Petitioner has presented no evidence to suggest Congress intended a diminution of the standard of evidence, and to do so *sua sponte* would contradict the plain language of the statute.

Finally, the petitioner urges the court to reevaluate the testimony of Mrs. Piper, Mr. Darman, and Mrs. Coffey, and contrary to the decision of the special master to find the petitioner's witnesses credible. As discussed above, credibility determinations are within the unique purview of the special master and should be accorded great deference by all reviewing authorities. This court has been presented with no new evidence, or basis on which to reject the special master's decision.

### CONCLUSION

In the case at bar, the special master considered the relevant evidence in the record as a whole, drew plausible inferences from the testimony and written evidence, and articulated a rational basis for his decision. This court does not find his conclusions of law and findings of fact to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Hines v. Sec'y DHHS*, 940 F.2d at 1527. Given the highly deferential standard of review to be applied, the decision of the special master is affirmed. *Estate of Arrowood v. Sec'y DHHS*, 28 Fed.Cl. at 456. After careful review of the filings and the relevant law, the court concludes that the petitioner has failed to meet the preponderance of the evidence standard required under the Vaccine Act. Petitioner has not shown by a preponderance of the evidence that Patricia Piper received a DPT vaccination on February 21, 1945, and, therefore, is not eligible for recovery under the terms of the Vaccine Act. For the reasons discussed above, petitioner's motion to set aside the decision of the special master is DENIED.

IT IS SO ORDERED.