Alisa BRADLEY and Ronald Bradley, parents and next friends of Rachel Bradley, Petitioners–Appellants,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SER-VICES, Respondent–Appellee.

No. 92–5066.

United States Court of Appeals, Federal Circuit.

April 22, 1993.

Paul A. Nelson, P.A., Tampa, FL, argued for the petitioners-appellants.

Catherine Reeves Oster, Dept. of Justice, Washington, DC, argued for respondent-appellee. With her on the brief were

Stuart M. Gerson, Helene M. Goldberg, and John Lodge Euler.

Before MICHEL, PLAGER, and RADER, Circuit Judges.

MICHEL, Circuit Judge.

Alisa Bradley and Ronald Bradley (the Bradleys), on behalf of their minor daughter, Rachel Bradley, appeal the judgment of the United States Claims Court[1] denying them compensation under the National Vaccine Injury Compensation Program, established pursuant to the National Childhood Vaccine Injury Act (Vaccine Act), 42 U.S.C. §§ 300aa–1 through 300aa–34 (Supp. II 1990), for injuries allegedly caused by a diphtheria-pertussis-tetanus (DPT) vaccine administered to Rachel. *Bradley v. Secretary of the Dep't of Health and Human Servs.*, 24 Cl.Ct. 641 (1991). Because the Claims Court correctly concluded that the special master's decision—that the Bradleys did not prove by a preponderance of the evidence that Rachel's injuries were listed in the Vaccine Injury Table of the Vaccine Act (Table Injuries) or were caused by the DPT vaccine—was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, we affirm.

## BACKGROUND

Rachel Bradley was born prematurely on July 19, 1983 and had several health problems at birth, including a cleft lip and palate, jaundice and anemia. Two months later, on September 27, 1983, she was admitted to a hospital for apnea (intermittent stoppage of breathing) and gastroesophageal reflux. On December 19, 1983, Rachel received a diphtheria-tetanus (DT) inoculation. She had no adverse reaction to it. On January 30, 1984, she received a second vaccination—a DPT inoculation. According to her mother's testimony at the evidentiary hearing before the special master,

Rachel suffered from several symptoms over the three days following the DPT vaccination—fever of 101–104 degrees, extreme irritability, redness and swelling at the injection site, dropped head syndrome, staring episodes during which she did not react to any external stimuli and fitful sleep. Mrs. Bradley further testified that she had phoned the pediatrician during that time period. Mrs. Bradley also testified, but was unsure during testimony, that Rachel also first lost her ability to sit upright during these three days.

A few months after the DPT vaccination, in May, Rachel began experiencing febrile seizures. She experienced several afebrile seizures over the next year, including several staring episodes. She now suffers from an attention deficit disorder, delayed speech, aggressive behavior, and head banging.

The Bradleys' Petition for Compensation was filed on September 30, 1990. In response, the Secretary filed a report recommending denial of compensation. An evidentiary hearing was held on June 12, 1991. Mrs. Bradley testified as to Rachel's symptoms during the first three days following the DPT vaccination, as set forth above. Two medical experts also testified on behalf of Rachel. Dr. Tilelli, a pediatrician, testified that, based upon Mrs. Bradley's testimony and Rachel's medical records since birth, it was his opinion that Rachel had suffered a hypotonic-hyporesponsive episode (HHE) due to the DPT vaccine. Dr. Morrell, a neurologist, testified that, based on all of the same evidence, it was his opinion that Rachel had suffered "an encephalopathy with seizure activity" due to the vaccine. Both HHEs and encephalopathy are Table Injuries, for which compensation is due if certain conditions are met.[2]

In contrast to the Bradleys' experts, Dr. Baumann, a pediatric neurologist appearing as the Secretary's medical expert, testi-

---

**1.** As of October 29, 1992, the "United States Court of Federal Claims." Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516 (1992).

**2.** The Vaccine Act provides that if petitioner proves by a preponderance of the evidence that

he or she suffered a Table Injury within the applicable statutory period after the vaccination and there is not preponderant evidence that the injury was due to any non-vaccination cause, the petitioner shall receive compensation for that injury. 42 U.S.C. §§ 300aa–13 and –14.

fied that he did not believe that Rachel had suffered any of the Table Injuries because the medical records made no mention of any such symptoms and Mrs. Bradley's testimony did not, in Dr. Baumann's view, describe the type and extent of symptomatology that would indicate the existence of a Table Injury. Furthermore, Dr. Baumann believed that all of the symptoms described by Mrs. Bradley were consistent with Rachel's high fever, which, by itself, is not indicative of a Table Injury.

The special master ruled, in an oral decision on June 12, 1991, that Rachel Bradley had "not been able to show the existence of a table injury or causation by a preponderance of the evidence." June 12, 1991 Hearing Transcript (Tr.) at 136. In reaching this conclusion, the special master reasoned that, although he believed that Mrs. Bradley was telling the truth as she remembered events, her recollections were not credible and persuasive in certain respects because (a) there were no corroborating, contemporary medical records and (b) the experts' testimony conflicted as to the meaning of the events she described. *Id.* at 136–40. In addition, the special master found Dr. Tilelli's testimony regarding HHEs to be unpersuasive in light of Dr. Baumann's descriptions of such shock collapses as more noticeable and dramatic events than those suffered by Rachel as related by her mother. *Id.* at 141. The special master accepted Dr. Tilelli's testimony, corroborated by Dr. Baumann, that Rachel did not suffer seizure activity or encephalopathy in the days directly following the vaccination, and therefore found Dr. Morrell's testimony regarding seizures to be unpersuasive. *Id.* at 141–42. Furthermore, the special master rejected both Dr. Tilelli's and Dr. Morrell's causation testimony linking Rachel's injury to the DPT vaccination because each one's statement was dependent on his respective belief that a certain injury had been manifested by Rachel, and the special master had previously found their respective injury analyses unconvincing. *Id.* at 143.

The day after making his bench ruling, the special master issued an order stating:

[I]f petitioners intend to seek review, or if petitioners seek a more detailed decision in order to determine whether to seek review, petitioners shall file a written request for a decision by July 12, 1991. In either case, petitioner's request should be in the form of a memorandum specifying in what respect the bench ruling is perceived to be unclear, incomplete, and/or erroneous.

Although the Bradleys objected to the order, they filed such a request, and the special master then filed an unpublished written decision on September 10, 1991. This written decision restated and clarified the special master's reasoning given originally in his bench ruling. The special master's explanations responded specifically to the Bradleys' questions and assertions of error regarding the bench ruling.

The Bradleys petitioned the Claims Court for review of the special master's decision, challenging the decision on various substantive and procedural grounds. The Claims Court sustained the special master's decision and upheld the special master's findings and conclusions in the face of essentially the same challenges made here. In doing so, it recognized the Vaccine Act's arbitrary and capricious standard of review for fact-findings and stated:

[T]he Act accords to the findings of the special master the usual deference due an administrative fact-finder: "[i]f the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." Such is the case here.

*Bradley,* 24 Cl.Ct. at 644 (quoting *Hines v. Secretary of the Dep't of Health and Human Servs.,* 940 F.2d 1518, 1528 (Fed.Cir. 1991)).

## DISCUSSION

■ In reviewing the special master's decision, findings, and conclusions, the Claims Court may:

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa–12(e)(2). Thus, the Claims Court judge reviews the special master's decision essentially for legal error or factual arbitrariness. Here, the Claims Court judge found neither, and he therefore upheld the special master's findings and conclusions. The Claims Court's determination as to whether the special master's findings were arbitrary and capricious is a legal conclusion. *Munn v. Secretary of the Dep't of Health and Human Servs.*, 970 F.2d 863, 870 (Fed.Cir.1992); *Hines*, 940 F.2d at 1523–24. We therefore review that determination de novo.[3]

■ The Bradleys first argue that the special master's reliance on the absence of medical records is arbitrary and capricious because 42 U.S.C. § 300aa–13(b)(2) provides that the special master may find the first symptom of an injury occurred within the applicable time frame, even if the occurrence of the symptom was not recorded. What the Bradleys fail to mention, however, is that the same subsection of the statute further provides that:

**3.** The determination of whether fact-finding was arbitrary and capricious, we have held, is a legal conclusion, *Munn*, 970 F.2d at 870 ("the only time the Claims Court can make its own findings of fact is when that court, *as a matter of law*, has concluded that the special master was 'arbitrary and capricious'") (emphasis added); *Hines* at 1524 ("a Claims Court vaccine decision upholding a special master must be viewed as a *legal* conclusion that the master's decision was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....'") (emphasis in original). *Cf.* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2524 at 541–42 (1971) ("Whether the evidence is sufficient to create an issue of fact for the jury is solely a question of law to be determined by the court. The standard in passing on that question is the same.... in the trial court and on appeal.") Legal conclusions are, of course, always reviewed de novo. *See, e.g., Powers v. Commissioner of Internal*

Such a finding may be made *only* upon demonstration *by a preponderance of the evidence* that the onset or significant aggravation of the injury, disability, illness, condition, or death described in the petition *did in fact occur* within the time period described in the Vaccine Injury Table.

42 U.S.C. § 300aa–13(b)(2) (emphasis added). Here, the special master specifically found that, based on all of the evidence, the Bradleys had *not* demonstrated by a preponderance of the evidence that an onset had so occurred. Tr. at 136. Furthermore, 42 U.S.C. § 300aa–13(a)(1) provides that "[t]he special master or court may not make such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Here, there were no medical records that showed that the symptoms occurred within 72 hours of the DPT vaccine. In addition, although medical opinions were offered in support of Mrs. Bradley's testimony, those medical opinions were based largely on that testimony itself and, therefore, the special master could reasonably conclude that the medical opinions did not qualify "to substantiate" that testimony.

■ Second, the Bradleys assert that the special master's decision is arbitrary and capricious because, in rejecting Mrs. Bradley's testimony, he did not consider the facts and circumstances surrounding Mrs.

*Revenue*, 312 U.S. 259, 260, 61 S.Ct. 509, 510, 85 L.Ed. 817 (1941); *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 825 (Fed.Cir.1992). The concurrence, however, seemingly would square the standard of review: we would decide whether the Claims Court judge was arbitrary and capricious when he decided whether the special master was arbitrary and capricious. Such compounded deference would constitute a new, hybrid standard of second-tier review that has no support in the Vaccine Act, precedent, or elsewhere.

When the Claims Court upholds all of the findings of the special master, there are no findings by the Claims Court. 42 U.S.C. § 300aa–12(e)(2)(A). Thus, if findings are challenged on appeal, we must review the findings of the special master. As the Vaccine Act explicitly commands, those findings are reviewed under an arbitrary and capricious standard. 42 U.S.C. § 300aa–12(e)(2)(B).

Bradley's perception of events—*e.g.*, that Rachel had had several significant health problems starting at birth, and therefore Mrs. Bradley may have reacted less dramatically than the special master would suppose appropriate to each new symptom that occurred. However, in weighing Mrs. Bradley's testimony, the special master made specific reference to several of those surrounding events, such as when (a) he compared the 72–hour post-vaccination period with the grand mal seizures that occurred later, Tr. at 137, (b) discussed the conflicting testimony regarding the extent of Rachel's illness during the three days in question, *id.*, and (3) mentioned Mrs. Bradley's failure to remember exactly the extent of Rachel's sitting ability, *id.* at 138. He just did not find Mrs. Bradley's testimony credible. Furthermore, even the Bradleys' two medical experts differed in their assessment of that testimony—they each found it probative of different injuries.

■ The fact-finder has broad discretion in determining credibility because he saw the witnesses and heard the testimony. *Griessenauer v. Department of Energy*, 754 F.2d 361, 364 (Fed.Cir.1985). Such credibility determinations are "virtually unreviewable" by our court. *Hambsch v. Department of the Treasury*, 796 F.2d 430, 436 (Fed.Cir.1986). Thus, the special master did consider the facts and circumstances involved in Mrs. Bradley's testimony, and his rejection of that testimony, in light of all of the evidence, was not arbitrary and capricious.

■ Third, the Bradleys assert that the special master erred in relying on Dr. Baumann's opinion because Dr. Baumann did not consider Mrs. Bradley's testimony in reaching his opinion regarding encephalopathy. However, Dr. Baumann did give consideration to Mrs. Bradley's testimony in that regard. Dr. Baumann stated that he had reviewed Mrs. Bradley's affidavit, *see* Tr. at 107, he made several references throughout his testimony to her affidavit and to her oral testimony, *see, e.g., id.* at 108, 109, 111, and he referred to Mrs. Bradley's "description" of Rachel's illness when testifying specifically to his opinion on en-

cephalopathy, *see id.* at 111. Dr. Baumann just did not think that the testimony described the kind of symptoms required for a finding of encephalopathy. It was not arbitrary and capricious for the special master to give weight to his opinion.

■ Fourth, the Bradleys, assuming incorrectly that the special master had determined that Rachel had suffered a Table Injury, assert that the special master erred in denying them compensation because in order to do so he would have had to have concluded that alternative causation for that injury was established by a preponderance of the evidence, *see* 42 U.S.C. § 300aa–13(a)(1)(B), and he failed to do so. This argument is unfounded, because the special master concluded that a Table Injury had not been proven. According to the statute, the petitioner is granted compensation only when

the special master or court finds on the record as a whole—

(A) that the petitioner has demonstrated by a preponderance of the evidence the matters required in the petition by section 300aa–11(c)(1) of this title, and

(B) that there is not a preponderance of the evidence that the illness, disability, injury, condition, or death described in the petition is due to factors unrelated to the administration of the vaccine described in the petition.

*Id.* § 300aa–13(a)(1). Thus, when, as here, the special master concludes that a petitioner has *not* demonstrated by a preponderance of the evidence a Table Injury or causation required under subsection (A), the alternative causation theories of subsection (B) need not be addressed. Hence, the special master was not required to make a finding regarding alternative causation.

Fifth, we have considered the Bradleys' challenge to Dr. Baumann's evaluation of causation and find it to be without merit because, like the previous argument, it confuses the primary statutory requirement that petitioner prove the existence of a Table Injury, *see id.* § 300aa–13(a)(1)(A), with the contingent statutory requirement

that there not be preponderant proof, *after* the existence of that Table Injury is established, that the injury was caused by something other than the vaccination, *see id.* § 300aa–13(a)(1)(B).

▮ Finally, the Bradleys allege that the special master abused his discretion by issuing a bench ruling and then requiring them, in order to receive a written decision, to file a written memorandum pointing out the errors they perceived in that ruling. There is nothing in the statute or the Vaccine Rules of the Office of Special Masters of the United States Claims Court, however, that requires the special master to issue a written decision. The Claims Court judge approved the "special master's decisional mechanics," stating that "it is hard to understand how one can find fault with a procedure that, in effect, grants a litigant a second full opportunity to argue his case before the decision maker." *Bradley*, 24 Cl.Ct. at 647. We agree.

## CONCLUSION

Because we conclude on de novo review of the Claims Court's rulings[4] that the findings and conclusions of the special master were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and that the special master committed no error in his "decisional mechanics," the Claims Court's judgment, entered in accordance with the special master's decision, is

AFFIRMED.

PLAGER, Circuit Judge, concurring in part and dissenting in part.

I concur in the judgment reached by the majority—"[b]ecause the Claims Court correctly concluded that the special master's decision ... was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, we affirm." Opinion at 1572. Unfortunately, the explanation the majority gives for how they arrived at that judgment departs from our precedents, creates confusion about our role, and leaves litigants with the unrealistic hope that there is a second bite here at the compensation apple. I respectfully dissent from the majority's effort at so describing the applicable law.

1.

The question about which we differ is simply this: whom do we review, and by what standard. In two lengthy textual footnotes (op. at 1574 n. 3, and 1576 n. 4) the majority tells us its answer, which at bottom seems to be that the standard is a "legal" conclusion that we review "de novo," and from that all else appears to follow automatically. But saying something is 'legal' hardly defines the universe of possible consequences—a fact deter-

---

**4.** In another recent vaccine compensation case, *Phillips v. Secretary of Dep't of Health & Human Servs.*, 988 F.2d 111 (Fed.Cir.1993), this court relies on language in *Munn*, 970 F.2d 863, to suggest review of the Claims Court judgment under a less rigorous standard than de novo. The *Phillips* opinion's implied interpretation of *Munn* is untenable for three reasons. First, it contravenes the holding in *Hines*, 940 F.2d 1518, a prior precedent of this court. Second, the *Munn* language to which the *Phillips* court appears to refer (the opinion cites no specific page or portion) is merely *dicta* because *Munn* never specifically applied any other standard of review than de novo review to any Claims Court legal conclusions: "Petitioner has not shown that the decision of the Claims Court was *incorrect with regard to matters of law,* or that the judgment of the Claims Court was otherwise in error under any applicable standard of review." 970 F.2d at 874 (emphasis added). Third, the *Phillips* court's interpretation of *Munn* is incon-

sistent with the Vaccine Act and the holding in *Munn* itself. Elsewhere, *Munn* clearly states "that the Claims Court's *judgment* is entitled to at least the same deference by us as that accorded the special master by the Claims Court." *Id.* at 870 (emphasis added). When, as in *Munn* and *Phillips,* the Claims Court upholds all of the special master's findings and conclusions, the Claims Court's "judgment [is entered] in accordance with the special master's decision." 42 U.S.C. § 300aa–12(e)(3). Thus, the "judgment" is reviewed with respect to its bases—the *special master's* findings and conclusions—which are reviewed under the arbitrary and capricious standard per 42 U.S.C. § 300aa–12(e)(2)(B). The Claims Court's "decision" (opinion) may be helpful in identifying the relevant findings of the special master that are challenged by petitioner, but we actually review the judgment and its supporting findings, rather than the "decision," as *Phillips* appears to suggest.

mined to be such 'as a matter of law' and therefore presumably 'legal' does not thereby become less of a fact.[1] Since I am unable to find thaumaturgic qualities in such labeling, I seek the answer instead in the structure and words of the statute and in its legislative history.

There are a few simple propositions that leap out of a study of this vaccine compensation legislation, 42 U.S.C. §§ 300aa–11 to 300aa–34 (1988 & Supp. I 1989 & Supp. III 1991). The statute is sui generis—it creates a federal no-fault system for compensating injuries causally connected to the vaccines given to children. (For a full discussion of the statute and its purposes, see *Munn v. Secretary of Dep't of Health and Human Servs.*, 970 F.2d 863 (Fed.Cir. 1992)). The causal connection is presumed if the administration of the vaccine and the injury are proven to be related in time and nature as specified in 42 U.S.C. § 300aa–14 of the Act (a Table Injury), or if not so related, the connection may be established by other proof.[2] *Id.* §§ 300aa–11(c)(1)(C)(i) & (ii); *see id.* § 300aa–13(a)(1)(A). In either case, the issue is heavily dependent on the particular facts and circumstances.

After first doing it differently, Congress determined that fact finding and fact concluding were to be done by a group of specialists called Special Masters, under the overall supervision of the Claims Court, now the Court of Federal Claims (CFC).[3] The responsibility originally assigned to the CFC judges for making these factual determinations was taken away, *see id.* § 300aa–12(d)(1) (Supp. V. 1987), and Congress left them instead with a limited appellate review role, and with orders to apply a highly deferential legal standard to the review of the special masters' fact determinations. *See id.* § 300aa–12(e)(2).

In *Munn,* this court reviewed at length this history, and concluded that our own review role in turn must be equally if not more constrained. The statute directs that we "review the judgment of the [C]ourt [of Federal Claims]"—the judgment that court reaches after its review of the special master. 42 U.S.C. § 300aa–12(f). We agreed we would review that judgment on the same highly deferential standard that that court must apply to the special masters. I understand this to mean that we look at the judgment of the CFC, we read the judge's opinion in support of that judgment, and with regard to fact-based determinations, we defer absent a clear showing that something went badly awry.

The majority opinion in this case is based on a quite different approach. The special master's fact determinations come in for extensive review and discussion, and while they are ultimately upheld, the court makes clear that that is only because *we* find them acceptable. (The work of the CFC is mentioned occasionally in passing.) The majority believes it is our duty to do a second time what the statute has specifically assigned to the judges of the CFC: review the fact-based findings and conclusions of the special masters, and decide whether they should be upheld.

2.

There are two possible models for describing the review role to be played by this court under the Vaccine Act. One is the model used in review of decisions of the International Trade Commission (ITC), which decisions come to us after they have first been reviewed by the Court of International Trade (CIT). For all practical purposes, we ignore the work of the CIT judge, and re-examine the ITC decision as if no intermediate review had occurred. *See Matsushita Electric Industrial Co. v. United States*, 929 F.2d 1577, 1578 (Fed. Cir.1991). The other model is one similar

---

1. 'Legal' is one of those slippery legal terms, like 'jurisdiction.' It can be contrasted with factual, with equitable, and even with illegal. And as the majority notes, the label 'legal' can be invoked in explaining what is or is not a jury question, an issue hardly related to a vaccine case.

2. Preponderant evidence that the injury was in fact due to a non-vaccine related cause will result in a denial of compensation. § 300aa–13(a)(1)(B).

3. Omnibus Budget Reconciliation Act, Pub.L. No. 101–239, § 6601, 103 Stat. 2106, 2286–88 (1989); 42 U.S.C. §§ 300aa–12(c) & (d).

to that mandated by statute in our review of the Court of Veterans Appeals (COVA)—factual determinations are excluded from our review, so that we review questions of law only. *See* 38 U.S.C. §§ 7292(d)(1) & (2).

Unfortunately the Vaccine Act does not tell us which is the correct model for review under the Act. The structure of the Act, the legislative history, and respect for conservation of judicial resources in a time of resource constraint all dictate something closer to the COVA model than to the CIT model. That model is the one this court laid out in *Munn,* and recently reaffirmed in *Phillips v. Secretary of Dep't of Health and Human Servs.,* 988 F.2d 111 (Fed.Cir. 1993). The majority, in its justification of the result in this case, and in its justification for that justification, has substantially deviated from this controlling precedent. I fear this will add confusion to the law, and serve only to encourage useless appeals.

We should accept that we have no particular expertise to add to these fact- and credibility-controlled decisions, and we should acknowledge that our role is indeed limited as Congress undoubtedly assumed it would be.[4] As the data show, the initial decisions by the special masters on fact issues when affirmed by a judge of the CFC are for all practical purposes final.[5]

Families seeking compensation under the Vaccine Act are victims of a great tragedy—they have a seriously injured infant who will require lifetime care. The compensation program established by Congress however is limited—only those infants found as a fact to have vaccine-caused injury within the scope of the Act are compensated from the fund. Congress intended the 1989 revisions to provide a "quick, flexible, and streamlined system."[6] A duplicate appellate review of the special masters' fact-finding hardly meets Congress' purpose, and changes little if anything in terms of outcomes.

In a thoughtful book recently published, Professor Joseph Goldstein sets out five 'Canons of Comprehensibility' for opinion writing.[7] While his focus is on Supreme Court exposition of the Constitution, his canons are equally applicable to Courts of Appeals interpreting Congressional legislation. He urges that judges "Write with candor and clarity," and that they "Acknowledge and explain deliberate ambiguity."[8] Candor suggests that we acknowledge the very real limits on this court's review of these tragic cases, so that the families of these injured infants are not led to believe that there is a realistic chance of overturning a fact-based decision against them.[9] We do our part when we insure that the special masters and the CFC understand and apply the correct law as we know it. For all the reasons suggested, I cannot join the opinion which supports the judgment we unanimously reach.

---

**4.** See House Conf.Rep. No. 386, 101st Cong., 1st Sess., 1989 U.S.C.C.A.N. 1906, 3018, 3115–3122.

**5.** Available data as of this writing shows: out of 27 appeals to this court by disappointed claimants for compensation, in no case did we reverse a decision of a special master which had been affirmed by the CFC; in one case we vacated and remanded but only on the calculation of damages. (In two of the 27 cases no petition for review was taken to the CFC, or if taken it was later withdrawn before a decision was reached; in 3 cases we affirmed the CFC's reversal of the special master; one of the 27 was a pre–1989 Act case; which leaves 20 cases in which the special master was affirmed by the CFC, all of which we affirmed.)

**6.** House Conf.Rep., n. 4, 1989 U.S.C.C.A.N. at 3115.

**7.** Joseph Goldstein, The Intelligible Constitution (Oxford U. Press 1992).

**8.** Canon 2, at 114; Canon 3, at 116.

**9.** I appreciate that families will not often have read the opinions of this court on the subject, but I assume that legal counsel will, and will give responsible advice to their clients.