Chance Kevin **ANKENBAUER**, by his mother and next friend, Diane **ANKENBAUER**, Petitioner,

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES**, Respondent.

No. 90–1038V.

United States Court of Federal Claims.

July 22, 1994.

Michael R. Hugo, Boston, MA, for petitioner, with whom were Kevin P. Conway and David Lewis.

Alphonso J. Montano, Torts Branch, Dept. of Justice, Civil Div., Washington, DC, for respondent, with whom were Gerard W. Fischer, Asst. Director, Torts Branch, Civil Div., John Lodge Euler, Deputy Director, Torts Branch, Civil Div., Helene M. Goldberg, Director, Torts Branch, Civil Div., and Frank W. Hunger, Asst. Atty. Gen.

## OPINION

MARGOLIS, Judge.

This vaccine case is before the court on petitioner's motion for review of a special master's decision denying compensation for an alleged vaccine-related injury. Petitioner, Diane Ankenbauer, filed a claim on behalf of her son, Chance Kevin Ankenbauer, pursuant to the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa–1 *et seq.* ("Vaccine Act" or "Act"). Petitioner maintains she is entitled to relief because her son suffered an encephalopathy and residual seizure disorder within three days of receiving a diphtheria, pertussis and tetanus vaccination. After hearing testimony from several fact witnesses and considering extensive medical records, Special Master Elizabeth E. Wright denied compensation, concluding that petitioner failed to prove by a preponderance of the evidence that her son suffered the alleged injuries within the statutorily established time period. Petitioner asserts that the special master's decision is arbitrary and capricious because the special master required petitioner to meet a higher standard of proof than mandated by the Act and incorrectly weighed the evidence. Respondent, the Secretary of the Department of Health and Human Services, contends that the special master fully and properly considered all legal and factual issues in denying petitioner's claim. After reviewing the record, and after hearing oral argument, the court affirms the special master's decision.

## FACTS

Chance Kevin Ankenbauer ("Chance"), was born in Great Falls, Montana, on September 23, 1984. Chance received his first diphtheria, pertussis and tetanus ("DPT") vaccination two months later on November 27, 1984.

According to petitioner, the following day, Chance was overcome with a look of fear and his back stiffened and arched while feeding. On January 19, 1985, Chance was hospitalized and treated for a seizure disorder. The admission record from that episode states:

> Chance is a 3½ month old child who presents to the ER with a history of episodes in which he looks to the right with an unblinking stare and has movements of his right arm and right leg while in a trance-like state.
>
> HISTORY OF PRESENT ILLNESS: The problem was first noticed *last December* when the above episode was repeated twice within a two week period. The child had another episode last night and has had continuous episodes today.

Petition for Vaccine Compensation ex. 4 at 25 (filed Sept. 18, 1990) (emphasis added). On May 24, 1985, Dr. Mary Anne Gugenheim, a pediatric neurologist who examined Chance, stated that he "has had occasional grand mal and partial complex type seizures which first occurred in *January of 1985.*" *Id.* ex. 5 at 1 (emphasis added). On October 5, 1988, Dr. R. Kirby Reed recorded that Chance "began having seizures in November of 1984." *Id.* ex. 17 at 1 (filed Feb. 22, 1993).

Petitioner filed a claim for relief under the Vaccine Act on September 18, 1990. Petitioner asserted that the DPT vaccination caused Chance's seizure disorder. Petitioner pursued her claim as a Table Injury case. She presented evidence that Chance suffered an encephalopathy (swelling of the brain) and residual seizure disorder within three days of the DPT vaccination. Five fact witnesses testified at a hearing on March 11, 1993: petitioner; Mary Sue Willmarth, petitioner's co-worker and friend; Eva Marie Lauer, Chance's sitter; Dr. John A. Curtis, Chance's physician; and Lois Rice, petitioner's mother. The special master also considered Chance's extensive medical records, affidavits from Sheree Diede, petitioner's friend, and Dr. Marcel Kinsbourne, petitioner's medical expert, in addition to the opinion of Dr. Arnold Gale, a pediatric neurologist offered by respondent as a medical expert.

According to Dr. Kinsbourne,

In view of the close temporal relationship between Chance's first DPT vaccination and the onset on the same day of episodes that in my opinion were seizures, it is my opinion to a reasonable degree of medical certainty, that Chance's residual seizure disorder and the resulting psychomotor impairment, are due to the pertussis vaccine.

Affidavit filed on July 13, 1992 at p. 2. In contrast, Dr. Gale noted "[i]t is difficult to imagine that [Chance] could have experienced nearly daily seizures without documentation by his pediatrician," and concluded that the "medical record provides no evidence that Chance suffered either an acute encephalopathy or seizures within seventy-two hours of the administration of the DPT vaccine; nor does it provide evidence that his epilepsy was caused by the vaccine." Respondent's Report ex. A at 3 (filed Nov. 2, 1992).

The special master denied petitioner's claim, finding that she failed to meet her burden of proving by a preponderance of the evidence that Chance suffered an encephalopathy or seizure disorder within three days of the DPT vaccination. Specifically, the special master found that the medical records contradicted the witnesses' testimony by identifying the onset of seizure activity beyond the three-day period. As a result, the special master held that, "to meet the burden of proof, the petitioner must present thoroughly credible and persuasive testimony . . . to explain omissions or errors in the medical records." *Ankenbauer v. Secretary of Health and Human Servs.,* No. 90–1038V (Fed.Cl.Spec.Mstr. Apr. 11, 1994) at 6. Applying this standard, the special master concluded that the "testimony fails to demonstrate the degree of cogency necessary to allow a conclusion that there exists a preponderance of the evidence that Chance suffered a presumptively vaccine-related injury." *Id.* at 8.

### DISCUSSION

■ The Vaccine Act authorizes this court to "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2)(B). This provision contemplates three distinct levels of review: "[f]act findings are reviewed ... under the arbitrary and capricious standard; legal questions under the 'not in accordance with law' standard; and discretionary rulings under the abuse of discretion standard." *Munn v. Secretary of Health and Human Servs.,* 970 F.2d 863, 870 n. 10 (Fed.Cir.1992). Petitioner asserts that the special master failed to apply the correct legal standard for proving a Table Injury by requiring "thoroughly credible" witness testimony in light of the medical records. Because this is an issue of law, the court reviews it *de novo. Bradley v. Secretary of Health and Human Servs.,* 991 F.2d 1570, 1574 n. 3 (Fed.Cir.1993) (stating "[l]egal conclusions are, of course, always reviewed *de novo* "). Petitioner also argues that the special master erred by failing to find sufficient evidence that Chance suffered an encephalopathy and seizure disorder within three days of the DPT vaccination. This is a question of fact which the court will reverse only if the special master's decision is arbitrary or capricious. *Hines v. Secretary of Health and Human Servs.,* 940 F.2d 1518, 1527 (Fed.Cir.1991).

■ The Vaccine Act provides relief for certain vaccine-related injuries or deaths. The Act allows a petitioner to recover damages by proving that a particular vaccination caused an injury in two ways. First, a petitioner may establish causation by showing that the injury is listed on the Vaccine Injury Table ("Table"), 42 U.S.C. § 300aa–14(a), and that the first symptom or manifestation of the injury occurred within the time period specified on the Table. 42 U.S.C. § 300aa–11(c)(1)(C)(i). In other words, a petitioner can trigger a presumption of causation by showing a Table Injury. Alternatively, a petitioner may recover under the Act by showing that the vaccination, more likely than not, caused the injury. *Id.* at § 300aa–11(c)(1)(C)(ii). These two approaches differ significantly. Under the former, a petitioner need only show that, more likely than not, a Table Injury followed a vaccination within a specified time. Under the latter, a petitioner must show: (1) an injury, and; (2) that the vaccination in fact caused the injury, *both* by a preponderance of the evidence.

The special master applied the correct legal standard in reviewing petitioner's claim for a DPT Table Injury. The DPT Table Injuries include encephalopathy and residual seizure disorder. *Id.* at § 300aa–14(a)(I)(B), (D). The time period is three days. *Id.* Thus, in order to invoke the Act's presumption of causation, petitioner had the burden of showing that Chance suffered an encephalopathy or seizure by November 30, 1984. The Act expressly precludes a special master from granting compensation for a vaccine-related injury or death "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." *Id.* at § 300aa–13(a)(1).

As a matter of law, the special master did not err by requiring "thoroughly credible" witness testimony to establish a Table Injury claim when presented with contradictory medical records. As previously held by this court,

[t]he special master's assignment of greater evidentiary weight to the medical records than to the testimony of the petitioners did not create a presumption against their veracity nor increase their burden of persuasion. The principle applied by the special master concerned the appropriate weight to be accorded the evidence in the record. It in no way concerned petitioners' burden of proof.

The principle that contemporaneous written documents are entitled to greater weight as evidence than later conflicting oral testimony is well established and long has been recognized by the Supreme Court, the Court of Claims, the Federal Circuit, and this court.

*Cucuras v. Secretary of Health and Human Servs.,* 26 Cl.Ct. 537, 542 (1992), *aff'd,* 993 F.2d 1525 (Fed.Cir.1993); *see also Murphy v. Secretary of Health and Human Servs.,* 23 Cl.Ct. 726, 733 (1991) (citing *United States v. Gypsum Co.,* 333 U.S. 364, 396, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1947) (oral testimony in conflict with contemporaneous records accorded less evidentiary weight)).

■ Moreover, the special master correctly applied this evidentiary rule. Chance's

medical records clearly contradicted the witnesses' testimony. Petitioner presented testimony, including her own, that Chance suffered an encephalopathy and seizure before November 30, 1984. However, the medical records most proximate to the vaccination—the hospital admission record from January 19, 1985, and Dr. Gugenheim's report—identify the onset of seizure activity after November 30, 1984. The first medical record to even suggest that Chance experienced an encephalopathy or seizure within the Table period was made by Dr. Reed on October 5, 1988. The special master was justified in discounting the significance of Dr. Reed's report given the length of time between that report and the vaccination. As in *Cucuras*, no medical record specifically says that Chance's seizures began the day after the DPT vaccination, as alleged by petitioner. *See Cucuras*, 26 Cl.Ct. at 542. Both this court and the Federal Circuit affirmed the special master's decision in *Cucuras* that the witnesses' testimony was not sufficiently credible to carry petitioner's burden in light of the medical records.[1] The court finds it cannot distinguish the facts of this case from those at issue in *Cucuras*.

Finally, petitioner asserts that the special master's decision is arbitrary and capricious because it effectively rejects the testimony of all of her witnesses. In essence, petitioner asks the court to reweigh the evidence. The court declines to do this. The record reflects that the special master fairly characterized the witnesses' testimony, properly evaluated the documentary evidence, and considered the issues thoroughly. This case concerns a judgment which the law firmly establishes should be left within the province of the special master: *i.e.*, whether petitioner met her burden of proving that Chance suffered an encephalopathy or seizure within three days of his DPT vaccination, or by November 30, 1984. *See, e.g., Suel v. Secretary of Health and Human Servs.*, 31 Fed.Cl. 1, 7 (1993). Given the special master's careful review of the medical records, the witness testimony, and the conflicting expert opinions, this court cannot find her decision arbitrary and capricious.

1. The court also rejects petitioner's argument that the special master's decision must be re-

### CONCLUSION

For the foregoing reasons, the court affirms the special master's decision denying petitioner's claim for relief under the Vaccine Act. The Clerk shall enter judgment accordingly.

versed because the medical records are inconsistent. *See Cucuras*, 26 Cl.Ct. at 542.