Michelle D. HELMS, as Parent and Legal Representative of Zachary David Lee Helms, deceased, Petitioner–Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent–Appellee.

No. 00–5110.

United States Court of Appeals, Federal Circuit.

May 29, 2001.

Rehearing and Rehearing En Banc Denied Aug. 6, 2001.

Before RADER, GAJARSA, and DYK, Circuit Judges.

PER CURIAM.

Michelle D. Helms, on behalf of her deceased son, Zachary Helms, appeals the May 26, 2000, decision of the United States Court of Federal Claims, denying Ms. Helms' petition for compensation under the National Childhood Vaccine Injury Act. 42 U.S.C. §§ 300aa–1—300aa–34 (1994) (the Vaccine Act). The Court of Federal Claims affirmed the January 28, 2000, decision of the special master, who concluded that Ms. Helms did not meet her burden of proving by a preponderance of the evidence that a vaccine caused her son's death. Because the special master and the court properly assessed the testimonial and medical evidence, this court *affirms*.

## BACKGROUND

On January 25, 1995, about a month after his second birthday, Zachary re-ceived a vaccination injection for Po-lio/DPT/HIB/MMR (polio/diphtheria-per-tussis-tetanus/hemophilus influenza-b/measles-mumps-rubella). Less than two days later, on the morning of January 27, 1995, Zachary was found dead in his crib. An autopsy indicated that he had died of a general cerebral edema. The coroner stated that the cause of death was "undetermined" and that "no connection had been made to associate the vaccines with [Zachary's] death."

Ms. Helms filed suit against the Department of Health and Human Services (HHS) on August 19, 1996, alleging that Zachary suffered a fatal toxic encephalopathy due to the vaccine. Zachary's alleged encephalopathy did not satisfy the definition of encephalopathy under the Vaccine Injury Tables, 42 U.S.C. §§ 300aa–14(a). Ms. Helms, therefore, proceeded under 42 U.S.C. §§ 300aa–11(c)(1)(C)(ii)(*l*), which required her to prove by a preponderance of the evidence that the vaccine in fact caused Zachary's injuries.

During an entitlement hearing with the special master, Ms. Helms presented an expert witness, Dr. Richard Defendini, a lecturer in neuropathology at Columbia University. Dr. Defendini testified that Zachary's death was caused by an "acute toxic encephalopathy," which, in turn, was caused by the vaccine administered two days before his death. Dr. Defendini ruled out an ischemic event, such as a blood deficiency, based on the absence of "hot pink" nerve cells (a coloration of brain cells caused by acute ischemic necrosis) in autopsy slides. Dr. Defendini also rejected the hypothesis that Zachary died of suffocation, finding it improbable that a two-year old would die from having his face buried in a pillow.

HHS presented an expert witness, Dr. Lucille Rorke, a board certified pediatric

neuropathologist. In contrast with Dr. Defendini, Dr. Rorke stated that Zachary's death was most likely caused by suffocation, not encephalopathy. Dr. Rorke referred to evidence of cellular degeneration, including damage to Purkinje cells in Zachary's cerebral cortex, indicating that he died of acute asphyxial damage to the brain. Dr. Rorke also testified that the Polio/DPT/HIB/MMR vaccine had not been shown to cause toxic encephalopathy.

After holding an entitlement hearing, the special master denied Ms. Helms compensation under the Vaccine Act. After Ms. Helms filed a Motion for Review, the Court of Federal Claims vacated the special master's decision and remanded for further findings, stating that it was "unclear how the Special Master, in applying *Daubert* [509 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ], took into consideration the numerous articles presented by the petitioner noting a causal connection between the administration of DPT vaccines and major neurological events, expressly including toxic encephalopathies." On remand, the special master again denied Ms. Helms compensation. The Court of Federal Claims affirmed the special master's second decision, stating that "the Special Master, on remand, rationally analyzed the medical evidence in concluding that the Petitioner failed to carry her burden of proof to show that the vaccine had caused Zachary's death."

## DISCUSSION

Under the Vaccine Act, the Court of Federal Claims may not disturb the factual findings of the special master unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2)(B). This court reviews *de novo* the Court of Federal Claim's affirmance of the special master's factual determinations, reapplying that court's standard of review. *Hines v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 1518, 1524 (Fed.Cir.1991). In other words, this court essentially reviews the underlying decision of the special master under the arbitrary and capricious standard. *Patton v. Sec'y of the Dep't of Health & Human Servs.*, 25 F.3d 1021, 1025 (Fed.Cir.1994). As a consequence, this court's review of the special master's fact-finding is highly deferential. "If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines*, 940 F.2d at 1528.

As conceded by Ms. Helms, Zachary's alleged encephalopathy did not satisfy the definition of encephalopathy under the Vaccine Injury Tables. Thus, the inquiry in this case is whether Ms. Helms showed by a preponderance of the evidence that the vaccine actually caused Zachary's injury or condition. *Bradley v. Sec'y of Dep't of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed.Cir.1993); *Munn v. Sec'y of Dep't of Health & Human Servs.*, 970 F.2d 863, 865 (Fed.Cir.1992) (stating that petitioner "must prove by a preponderance of the evidence that the vaccine, and not some other agent, was the actual cause of the injury").

Ms. Helms asserts on appeal that the special master erred in relying on Dr. Rorke's testimony rather than the testimony of her expert, Dr. Defendini. As long as the special master considered the facts and circumstances surrounding the witnesses' testimony, however, the special master's refusal to rely on the opinion of Ms. Helms' expert is virtually unreviewable. *Bradley*, 991 F.2d at 1575. A special master may reject an expert's testimony when it is reasonable to do so. A reasonable basis includes those circumstances in which a special master finds one expert to be more persuasive than another. *Burns v. Sec'y of Health & Human Servs.*,

3 F.3d 415, 417 (Fed.Cir.1993). The special master discussed both Dr. Defendini's and Dr. Rorke's opinions in his decision, and indicated that he did not find Dr. Defendini's opinion to be convincing evidence that Zachary suffered from encephalopathy, rather than suffocation.

Under the statutorily prescribed, deferential standard of review, this court may not substitute its judgment for that of the special master. *Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (holding that reviewing courts may not substitute their judgment for that of the decision-maker under the arbitrary and capricious standard of review). While this court appreciates Ms. Helms' position, and recognizes that she was not in any way responsible for Zachary's death, the special master did not abuse his discretion by finding Dr. Rorke to be more persuasive than Dr. Defendini. Because the special master's decision was not arbitrary, capricious, or an abuse of discretion, this court affirms the decision of the Court of Federal Claims.