# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-2116V
UNPUBLISHED

| | |
|---|---|
| RUSTY ROSS ALTO,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: December 2, 2025 |

*Jennifer Leigh Allen, Allen Law LLC, Ellicott City, MD, for Petitioner.*

*Margaret Armstrong, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT AND ORDER TO SHOW CAUSE[1]

On November 1, 2021, Rusty Alto filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered anaphylaxis or "some form of respiratory and cardiac injury" after receiving an influenza ("flu") vaccine on October 31, 2018. Petition ("Pet.") at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find Petitioner has not met the requirements of a Table Claim. Petitioner has also failed to establish that he likely suffered the residual effects of his injury for more than six months. Unless Petitioner can show cause why this claim is tenable, it may face dismissal.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.     Procedural History

Petitioner alleges that he received a flu vaccine on October 31, 2018, and that he suffered the Table Injury of anaphylaxis or, in the alternative, "some form of respiratory and cardiac injury" that was "caused in fact" by the vaccination. Pet. at 1-2. He asserts that he suffered an allergic reaction to the vaccine that resulted in a sudden decrease in blood oxygen levels and a spike in blood pressure resulting in vitreous hemorrhaging. *Id*. at 2, 7.

After the claim's initiation, Petitioner sought numerous extensions, and ultimately filed six exhibits and a statement of completion on January 22, 2024. ECF Nos. 11, 12, 13. Petitioner was informed that his filing was "not substantially complete" on February 5, 2024. ECF No. 14. Following an initial status conference, Petitioner sought an extension for filing an amended petition and outstanding records, but did not later do so. ECF No. 17.

Respondent filed a motion to dismiss on August 6, 2024. Respondent's Motion to Dismiss ("Mot.") (ECF No. 19). Respondent argues that Petitioner has not established he received a flu vaccine on October 31, 2018, has not established that he suffered anaphylaxis or a Table injury, and that his injury is due to a preexisting condition. *Id.* at 9-12.

Petitioner filed his response and additional evidence on August 20, 2024. Response to Motion to Dismiss ("Pet. Res."), ECF No. 20. Petitioner argues that he has established a prima facie case for causation. *Id.* at 22-31. Respondent filed a response on August 26, 2024. Respondent's Reply to Petitioner's Response to Motion to Dismiss ("Reply"), ECF No. 21.

## II.    Fact History

Petitioner's medical history includes uncontrolled type 2 diabetes, hypertension, hyperglycemia, congestive heart failure, and deep venous thrombosis. Ex. 6 at 1. There are also records of high blood pressure, including in 2017. Ex. 6 at 4. Petitioner was taking blood pressure medication prior to his vaccination, and was diagnosed with hypertensive urgency. *Id.*

Petitioner allegedly received a flu vaccine on October 31, 2018, although there is no vaccination record. Ex. 1 at 4. Petitioner had an appointment with his primary care provider, Dr. Ashley Bryson, at 10:10 AM on October 31, 2018. *Id.* at 1. He reported that he did not take his medicine that morning, was initially asymptomatic, however "5 minutes later developed a HA [headache] which he says has been off and on, and no reporting

blurred vision…is dizzy." *Id.* He was sent to the emergency department, possibly due to chest pain and elevated blood pressure. *Id.* at 3.

At the emergency department, Petitioner reported that he had gone to the Cascades East clinic for a flu vaccine, "and then his blood pressure got higher and he started having substernal chest pain." Ex. 1 at 4. He also reported an ongoing upper respitory infection for the past two weeks, that he has not seen a cardiologist for his congestive heart failure, and that he has had ongoing problems from Rocky Mountain spotted fever. *Id.* Petitioner was also taking medications for his upper respiratory infection that "[h]e realizes … may raise his blood pressure…." *Id.* Petitioner denied shortness of breath, vision complaints, coughing, difficulty swallowing, or rashes. *Id.* at 7. He was diagnosed with chest pain and hypertension, and discharged later that day. *Id.* at 9.

On December 7, 2018, Petitioner sought care for left vison problems "so bad that all he could see [was] shadows and blurry figures." Ex. 3 at 1. He stated that the symptoms, including elevated blood pressure and dizziness, began three weeks prior, after he received a flu vaccine. *Id.*

Petitioner saw ophthalmologist Dr. Jonathan Fay on December 8, 2018, with complaints of diabetes and "vision loss; OS [(left side)]; Not Improving; 10 day (s); No Pain." Ex. 4 at 1. Dr. Fay's assessment was diabetes "with proliferative diabetic retinopathy without macular edema, bilateral" and vitreous hemorrhage in left eye. *Id.* at 4.

On December 10, 2018, Petitioner had a follow-up appointment with Dr. Bryson for hypertension, uncontrolled diabetes, blurry vision, and loss of vision in his left eye. Ex. 2 at 4. Petitioner attributed his blurred vison to "coughing and having high BP [blood pressure]" at his last appointment. *Id.* However, the record states "Dr. Fay said probably from diabetes and HTN [hypertension]." *Id.* at 4. Insulin was recommended but declined. *Id.* at 4-5.

Following a car accident on December 24, 2018, Petitioner suffered a headache, neck pain, and back pain. Ex. 2 at 8. He was diagnosed with acute neck strain, lumbar pain, and a concussion. *Id.* at 9-10.

Petitioner returned to Dr. Bryson on February 1, 2019, for a follow-up regarding his diabetes, blood pressure, and eye complaints. Ex. 2 at 11. Petitioner reported he was not taking all his prescribed diabetes medications; however his blood pressure was improved. *Id.* Petitioner also stated he was receiving injections in his eyes to help blood vessels grow back stronger. *Id.* at 11, 14. Additionally, he "reported to the MA that his vision loss

is due to his flu shot because that is what made his blood pressure go so high." *Id.* Dr. Bryson noted "that is not a likely reaction to the influenza vaccine" and even removed influenza from Petitioner's allergies. *Id.* at 11. Further, "[i]f one were to review his chart, they will note that his blood pressure has been markedly high on multiple occasions aside from surrounding the time of his influenza vaccine." *Id.*

Petitioner's BP remained elevated throughout 2019 and 2020. Ex. 4 at 38 (178/110 on February 22, 2019); *id.* at 45 (176/108 on March 22, 2019); Ex. 5 at 1 (179/103 on April 26, 2019); *id.* at 6 (188/117 on May 24, 2019); *id.* at 13 (196/131 on May 31, 2019); *id.* at 20 (165/90 on June 24, 2019); *id.* at 27 (181/115 on July 1, 2019); *id.* at 58 (173/106 on February 24, 2020).

Petitioner continued to follow up with Dr. Fay through February 2020. He received Avastin and Eyela injections in both eyes. Ex. 5 at 57. Petitioner's "problem summary" included diagnoses of diabetes, hypertension, congestive heart failure, and preproliferative diabetic retinopathy. *Id.*

## III.    Analysis

### A.  Petitioner Likely Received a Flu Vaccine on October 31, 2018

Respondent argues that Petitioner has not provided proof of vaccination, and "[g]iven how much time [P]etitoiner was given to file a vaccine record, the fact that one has not been filed suggests that one does not exist." Mot. at 9.

Under the Vaccine Act, establishing proof of vaccination is a threshold matter in order to prevail under either a "Table" injury (in which causation is presumed) or an "off-Table" injury, in which petitioner identifies a causal link between the vaccine and the alleged injury. § 300aa–11(c)(1)(A) and (B). A claimant must first prove by a preponderance of the evidence that he "received a vaccine set forth in the Vaccine Injury Table." § 300aa-11(c)(1)(A). A special master shall assess "the record as a whole" and may not "find that a petitioner received a vaccine 'based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion.'" *Rich v. Sec'y of Health & Human Servs.*, No. 12–742V, 2013 WL 4476751 (Fed. Cl. Spec. Mstr. July 26, 2013) (§ 300aa–13(a)(1)).

Although contemporaneous documentation of vaccination from a healthcare provider is the best evidence to prove administration of a vaccine, it is not absolutely required in all cases. *Centmehaiey v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 612, 621 (1995) ("[t]he lack of contemporaneous documentary proof of a vaccination ... does not necessarily bar recovery"). The existing case law supports that corroborative, though

backward-looking, medical notations have been found to tip the evidentiary scale in favor of vaccine receipt. *Lamberti v. Sec'y of Health & Hum. Servs.*, No. 99–507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007). Further, a single notation of a statement made in the process of seeking medical care can satisfy the proof of vaccination requirement. *Groht v. Sec'y of Health & Hum. Servs.*, No. 00–287V, 2006 WL 3342222, at *2.

Special masters have thus found that vaccine administration occurred even in the absence of direct documentation. In such cases, preponderant evidence was provided in the form of other medical records and/or witness testimony. For example, corroborative, though backward-looking, medical notations have been found to tip the evidentiary scale in favor of vaccine receipt. *Lamberti*., No. 99–507V, 2007 WL 1772058 at *7 (finding multiple medical record references to vaccine receipt constituted adequate evidence of administration); *Groht*, No. 00–287V, 2006 WL 3342222 at *2 (finding a treating physician's note—"4/30/97—Hep B. inj. # 1 (not given here) (pt. wanted this to be charted)"—to be sufficient proof of vaccination); *Figueroa v. Sec'y of Health & Hum. Servs.*, No. 10-705V, 2014 WL 6819494, at *4 (Fed. Cl. Spec. Mstr. Nov. 7, 2014) (finding sufficient proof of vaccination where subsequent medical records documented that petitioner consistently reported receiving the subject flu vaccination); *Beckner v. Sec'y of Health & Hum. Servs.*, No. 11-668V, 2013 WL 3353993, at *8 (Fed. Cl. Spec. Mstr. Apr. 25, 2013) (finding sufficient proof of vaccination where a medical record created approximately a month after petitioner's alleged receipt of the subject vaccine documented petitioner's report of his vaccination and the statement was made "for the purpose of facilitating diagnosis and treatment of his condition...[and] the vaccination was received in such close temporal proximity to petitioner's admission that misremembering is unlikely").

Upon review of the record as it stands, I find that Petitioner has offered preponderant evidence that he likely received a flu vaccine on October 31, 2018. When Petitioner was seen at the emergency department on October 31, 2018 (the same day of his alleged vaccination), the record states he came from a clinic and that he "went there and got an influenza vaccine…." Ex 1 at 4. And he subsequently reported to other treaters vaccination around this time.

### B.  Petitioner Does Not Meet the Requirements for a Table Anaphylaxis

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the

duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, anaphylaxis following a flu vaccine is compensable if it manifests within four or less hours of vaccination.  hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XVI)(A). The Qualifications and Aids to Interpretation ("QAI") also specify that:

> Anaphylaxis is an acute, severe, and potentially lethal systemic reaction that occurs as a single discrete event with simultaneous involvement of two or more organ systems. Most cases resolve without sequela. Signs and symptoms begin minutes to a few hours after exposure. Death, if it occurs, usually results from airway obstruction caused by laryngeal edema or bronchospasm and may be associated with cardiovascular collapse. Other significant clinical signs and symptoms may include the following: Cyanosis, hypotension, bradycardia, tachycardia, arrhythmia, edema of the pharynx and/or trachea and/or larynx with stridor and dyspnea. There are no specific pathological findings to confirm a diagnosis of anaphylaxis.

42 C.F.R. § 100.3(c)(1).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

Petitioner alleges that he developed a headache, blurred vision, dizziness, fatigue, shortness of breath, and a spike in blood pressure following his vaccination. Pet. at 2. However, these symptoms are either not corroborated in the medical records or do not qualify as anaphylaxis. Shortly after vaccination, he was transported to an emergency department with complaints of high blood pressure and chest pain (symptoms not commonly associated with anaphylaxis), but denied shortness of breath, difficulty swallowing or speaking, or rashes. Ex. 1 at 4. He also did not receive any common treatment for anaphylaxis such as epinephrine or antihistamines. Additionally, his treating physicians did not include anaphylaxis as a potential ailment. Further, months after his vaccination, influenza was removed from a list of Petitioner's allergies because, according to Dr. Bryson, his complaints were "not a likely reaction to the influenza vaccine. Ex. 2 at 11.

In summation, there is insufficient evidence that Petitioner suffered the kinds of anaphylaxis symptoms described in the QAI, no records show that Petitioner was treated for anaphylaxis, and no reference in his medical records that he suffered anaphylaxis. Petitioner has not established that he has suffered this form of Table injury.

### C. Six Month Severity Requirement is Not Presently Met

All claims must satisfy the statutory requirement set forth in Section 11(D) of the Vaccine Act, which requires that a petitioner suffer the residual effects or complications of his injury for more than six months after vaccine administration (or, alternatively, die or

require inpatient hospitalization and surgical intervention as a result of his vaccine injury, neither of which (thankfully) occurred in the present case). The Vaccine Act obligates a petitioner to show, by preponderant evidence, that his alleged condition is the residual effects or complications of his vaccine-related injury. Unrelated subsequent harm, even if parallel to the initial injury, is not enough. *See, e.g.*, *Pearson v. Sec'y of Health & Hum. Servs.*, No. 17-489V, 2019 WL 1150044, at *11 n.13 (Fed. Cl. Feb. 7, 2019) (finding symptoms could not satisfy the six-month severity requirement because petitioner failed to persuasively link the alleged residual effects to her alleged initial anaphylaxis-type reaction); *Price v. Sec'y of Health & Human Servs.*, No. 11-442V, 2015 WL 7423070, at *7 (Fed. Cl. Spec. Mstr. Oct. 29, 2015) (awarding compensation to petitioner who experienced Table anaphylaxis that caused ongoing seizures for more than six months). The single anaphylactic event must thus be demonstrated to have resulted in *some* subsequent symptoms or complications that persisted or unfolded for at *least* six months thereafter. For example, a petitioner who faints from the anaphylaxis and then hurts himself, requiring six or more months of treatment, would be able to show severity.

Petitioner asserts that his purported anaphylaxis reaction caused him to suffer an allergic reaction that resulted in a sudden decrease in blood oxygen levels and an increase in blood pressure, resulting in vitreous hemorrhaging. Petition at 2, 7. Further, Petitioner alleges he suffered these injures for more than six months. *Id.*

In this case, to meet the six-month severity requirement Petitioner would need to preponderantly show that his changes in blood pressure were casually linked to his initial anaphylaxis on October 31, 2018. No physician associated his blood pressure changes with the flu vaccination. In fact, when Petitioner reported his vision loss was due to his flu shot "because that is what made his blood pressure go so high", Dr. Bryson noted that was "not a likely reaction to the influenza vaccine". Ex. 2 at 11. Dr. Bryson also noted that Petitioner's blood pressure was "markedly high on multiple occasions aside from surround the time of his influenza vaccine." *Id.*

Additionally, Petitioner would need to establish that the changes in his blood pressure from the vaccination caused his vitreous hemorrhage. Again, the records do not support this assertion. When Petitioner attributed his vision problems to coughing and high blood pressure, the records note that Dr. Fay doubted any changes in blood pressure caused his vision problems, instead saying it was "probably from diabetes and [hypertension]." Ex. 2 at 4. Further, Petitioner had a history of poorly controlled chronic issues including high blood pressure.

The onset of Petitioner's vision problems is also not explained, further undermining the allegations that the vaccine was somehow linked to an increase in blood pressure

and ultimately vitreous hemorrhaging. When Petitioner first reported vison loss in December of 2018, his symptoms were described as starting in the middle or end of November. Ex. 3 at 1; Ex. 4 at 1. Petitioner provides no reasoning as to why an alleged blood pressure change would cause vison problems weeks later.

The evidence on the question of severity thus currently tips against a favorable finding. But I will allow Petitioner the chance to supplement the record on this vital claim element.

## Conclusion

**For the reasons set forth above, Petitioner's Table Anaphylaxis Claim is dismissed.**

**Petitioner shall show cause why his claim should not be dismissed for failure to meet the six-month severity requirement. He shall file any additional evidence needed by no later than January 9, 2026.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master