**Mary Elizabeth HAGGERTY, by her mother and natural guardian Geraldine HAGGERTY, Petitioner,**

**v.**

**SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 95–306V.**

United States Court of Federal Claims.

Nov. 14, 1997.

Annamarie Bondi–Stoddard, Great Neck, NY, for petitioner.

Vincent J. Matanoski, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for respondent.

## ORDER

MILLER, Judge.

Petitioner challenges the special master's denial of compensation for her child's neurological injuries under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–I—300aa–34 (1994), *amended by* 42 U.S.C.A. §§ 300aa–1—300aa–34 (West 1991 and Supp.1997) (the "Vaccine Act"), on the basis that the special master abused her discretion in finding that the vaccine administered to the infant was for measles-mumps-rubella ("MMR"), rather than for diphtheria-pertussis-tetanus ("DPT"). Argument is deemed unnecessary.

## FACTS

The record reveals the following facts. On April 21, 1995, petitioner filed a claim for compensation under the Vaccine Act alleging that her daughter, Mary Elizabeth Haggerty ("Mary"), suffered an encephalopathy and residual seizure disorder as a direct result of receiving a DPT vaccination administered on May 7, 1993. *See Haggerty v. Secretary DHHS,* No. 95–306V, slip op. at 1. (Fed.Cl. Spec.Mstr. Mar. 4, 1997) (unpubl.).

After an uneventful pregnancy, Mary was born on November 21, 1991. It is undisputed that she was a healthy baby, who proceeded to develop normally. Mary received her first three DPT vaccinations with no reaction on January 12, 1992, August 12, 1992, and November 23, 1992. On May 7, 1993, Mary's pediatrician, Dr. Edward Reilly, administered two vaccines: an oral Sabin polio vaccination and what the special master found was a vaccination for MMR. It is undisputed that Mary received only one injection. After administering the vaccinations, Dr. Reilly recorded the vaccines and their corresponding lot numbers, "Sab[in polio] 664E6 and MMR 1507V," in his office notes and in Mary's official immunization records. However, Dr. Reilly wrote "DPT" in a booklet, distributed by Mead Johnson Nutritionals, that he had given petitioner previously. This booklet contains certain information, such as the child's height, weight, treatments, and vaccinations. At the commencement of the office visit, Dr. Reilly gave petitioner two information booklets, one for the polio vaccine, the other for the MMR vaccine.

On the evening of May 7, 1993, while in the care of her aunt, Mary suffered seizures and was rushed by ambulance to the hospital. The diagnosis was Status Epilepticus. Neurological examinations indicated that Mary suffered an abrupt encephalopathy approximately eight hours after her vaccinations. She remains severely impaired, has the mental abilities of a six month-old infant, and requires constant support.

Petitioner maintains that Mary suffered an encephalopathy and residual seizure disorder

as a direct result of receiving a DPT vaccination. On September 26, 1996, the special master conducted a hearing to determine which vaccine injection Mary, in fact, had received on May 7, 1993. Petitioner, her husband, and Dr. Reilly testified. After the hearing, both parties submitted expert affidavits regarding the positive results of Mary's measles-titer test, which was performed to determine if she had developed antibodies against measles (the result of either environmental exposure, vaccination, or both). Special Master Elizabeth E. Wright entered her decision on March 4, 1997, finding that Mary had received an MMR vaccination and thus her symptoms—residual seizure disorder and encephalopathy—did not meet the Vaccine Injury Table criteria for a vaccine-related injury. *Haggerty,* slip op. at 11. Petitioner declined to pursue an actual causation theory; accordingly, on September 3, 1997, the special master dismissed the petition.

## DISCUSSION

### 1. *Standard of review*

When reviewing a special master's decision, the Court of Federal Claims is authorized to "set aside any findings of fact or conclusion[s] of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law." 42 U.S.C. § 300aa–12(e)(2)(B) (1994). As the Federal Circuit has stated:

"These standards vary in application as well as degree of deference. Each standard applies to a different aspect of the judgment. Fact findings are reviewed by [the Federal Circuit], as by the Claims Court judge, under the arbitrary and capricious standard; legal questions under the 'not in accordance with the law' standard; and discretionary rulings under the abuse of discretion standard."

*Saunders v. Secretary of DHHS,* 25 F.3d 1031, 1033 (Fed.Cir.1994) (quoting *Munn v.*

*Secretary of DHHS,* 970 F.2d 863, 870 n. 10 (Fed.Cir.1992)).

■ The dispositive issue in this case—whether Mary received a vaccination for MMR or for DPT—is a factual finding and thus calls for a review under the arbitrary and capricious standard. *Saunders,* 25 F.3d at 1033.[1] The decision of a special master may be deemed arbitrary and capricious only if the special master

"relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence ... or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise[.]"

*Hines v. Secretary of DHHS,* 940 F.2d 1518, 1527 (Fed.Cir.1991) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983)). The arbitrary and capricious standard requires a high degree of deference to the special master's factual findings. *Cucuras v. Secretary of DHHS,* 993 F.2d 1525, 1527 (Fed.Cir.1993); *Bradley v. Secretary of DHHS,* 991 F.2d 1570, 1575 (Fed.Cir.1993); *Hines,* 940 F.2d at 1528. A special master also "has wide discretion in conducting the proceedings in a case." *Burns v. Secretary of DHHS,* 3 F.3d 415, 417 (Fed.Cir.1993) (citing RCFC App. J, Vaccine Rule 3(b)); *Murphy v. Secretary of DHHS,* 23 Cl.Ct. 726, 730 (1991), *aff'd,* 968 F.2d 1226 (Fed.Cir.1992).

### 2. *Petitioner's objections*

In challenging the special master's decision, petitioner makes four objections. First, petitioner argues that in arriving at her decision, the special master overlooked the relevant testimony of petitioner and Mr. Haggerty regarding the identification of the vaccine vial. The Haggertys testified that, after they described to hospital physicians the vial that Dr. Reilly used to administer the vaccination, the doctors stated that, because of its size, it could not have been an MMR vial. The

---

**1.** Although petitioner specifically cites the special master for abuse of discretion, the arbitrary and capricious standard applies to discretionary de-

terminations under the Vaccine Act. Indeed, petitioner does argue that certain findings are arbitrary and capricious.

Haggertys also averred in their virtually identical affidavits that a doctor showed them a comparable vial and asked if it was " 'the one.' " Affidavit of Geraldine Haggerty, Feb. 1, 1995, ¶ 13. Both petitioner and Mr. Haggerty stated that it was the same type of vial they saw Dr. Reilly use to vaccinate their daughter; the vial was for a DPT vaccine. Affidavit of Timothy Haggerty, Feb. 1, 1995, ¶¶ 13–14. The special master also noted, however, that hospital records suggested that two vials were shown to the Haggertys and that Mr. Haggerty testified that the doctors in the hospital showed them two vials to determine which Dr. Reilly had used, in contrast to his averment in his affidavit.

The special master stated:

As an initial matter, it would be difficult to remember exactly what a vial of vaccine looked like if one had no particular reason at the time to remember it. The witnesses have given inconsistent statements regarding whether they were shown two vials at the same time and asked if it was "the one . . . ." Without knowing exactly how the identification of the bottles [vials] took place, it is impossible to know whether the power of suggestion might have played a part in tipping the scales in favor of remembering the vial in a certain way.

*Haggerty,* slip op. at 9.

Petitioner takes issue with the special master's assumption that she and her husband would not be able to recall the description of the vial and argue that such a statement is arbitrary and capricious. Petitioner characterizes the special master's finding as "inaccurate," given that the records and all testimony indicate that the Haggertys described the vial used by Dr. Reilly before the doctors showed them any vial or noted that the vial described was DPT.

■ Petitioner faults the special master's weighing of the evidence and making credibility determinations. Even were the court to agree with petitioner that the Haggertys' testimony should have been given more weight, "[s]uch arguments as to the weighing of evidence, particularly where, as here, wit-

ness credibility is involved, do not demonstrate reversible error." *Hines,* 940 F.2d at 1527. A special master has "broad discretion in determining credibility because [s]he saw the witnesses and heard the testimony." *Bradley,* 991 F.2d at 1575 (citing *Griessenauer v. Department of Energy,* 754 F.2d 361, 364 (Fed.Cir.1985)).

■ The Haggertys' testimony pertaining to their description of the vaccine vial and the "DPT" notation in the Mead Johnson booklet were not the only pieces of evidence concerning the identity of the vaccination Mary received on May 7, 1993. The special master relied on other factual findings to determine that Mary received an MMR vaccination, as opposed to one for DPT. First, Dr. Reilly made two notations—one in his office records and one in Mary's official vaccination records—of having administered an MMR vaccine, along with the corresponding lot number of the MMR vaccine. He also testified that his medical records would be more elaborate than the information in the Mead Johnson booklet. Second, at the end of the office visit, Dr. Reilly gave petitioner pamphlets containing information addressing polio and MMR vaccines. Third, the Haggertys had a dinner engagement scheduled that evening. Petitioner told Dr. Reilly that she did not want her daughter to receive a DPT vaccination, given the chance she could suffer an adverse reaction immediately (whereas an MMR shot would not cause a reaction for at least a week). Fourth, when contacted weeks after the vaccination and told of the "DPT" notation in the Mead Johnson booklet, Dr. Reilly stated that he must inadvertently have written "DPT" because he had administered an MMR vaccine. Fifth, Dr. Reilly testified that he had not planned to give Mary a DPT vaccination on May 7, 1993, because a DPT booster was not due for another six months. Finally, Mary's measles-titer test was positive, indicating that she had measles antibodies either via exposure to the measles naturally or through an MMR vaccine.[2] Petitioner testified that to her knowledge Mary was not exposed to measles at school, from friends, or from sib-

---

2. Petitioner separately objects to the special master's finding that "[t]he preponderance of the evidence suggests that Mary acquired her antibodies through an immunization."

lings. Furthermore, the Centers for Disease Control has reported that the incidence of naturally occurring measles is very low. Considering the special master's broad discretion to weigh the evidence, *Bradley*, 991 F.2d at 1575, her de-emphasis of the Haggertys' testimony regarding the description of the vial cannot, and does not, render the special master's findings arbitrary and capricious or an abuse of discretion.

■ Petitioner's second objection is that the special master erred in finding by a preponderance of the evidence that Mary acquired her measles antibodies through an MMR vaccination. Mary received a positive result on a measles-titer test administered on June 27, 1996, indicating that she had formed measles antibodies in response to either natural exposure to measles or to an MMR vaccination. Petitioner filed an expert report to demonstrate that, because the test did not reveal how Mary developed her protective antibodies, the titer-test was "useless in determining the etiology of this child's immunity." *Haggerty*, slip op. at 8. Respondent also filed an expert report which concluded that Mary's exposure to measles was more likely from an MMR immunization than from natural exposure, given petitioner's testimony regarding Mary's lack of exposure to measles, and given the Centers for Disease Control report stating the incidence of measles was very low. The special master weighed this evidence, finding that the preponderance of the evidence suggested that Mary produced her antibodies in response to an MMR vaccination. The court cannot substitute its own judgment for that of the special master in weighing the evidence. *See Hines*, 940 F.2d at 1527.

■ Third, petitioner contends that the special master erred in finding that Dr. Reilly was "not so confused as to make the mistakes suggested." *Haggerty*, slip op. at 10. This is a credibility determination, which is the exclusive province of the special master, *Burns*, 3 F.3d 415 at 417, and as such is "'virtually unreviewable.'" *Bradley*, 991 F.2d at 1575 (quoting *Hambsch v. Department of Treasury*, 796 F.2d 430, 436 (Fed. Cir.1986)).

■ Finally, petitioner maintains that the special master abused her discretion by disregarding the affidavit of petitioner's pediatric neurology expert, Dr. Harvey Bennett. Dr. Bennett averred that the type of reaction Mary suffered "could only have occurred after the administration of a DPT vaccine." Affidavit of Dr. Harvey Bennett, July 17, 1997, ¶ 4. However, this logic begs the ultimate questions of which vaccine Mary received and whether it was responsible for her injury. It was the special master's prerogative to give this affidavit little weight.

The special master explained in her decision that Dr. Reilly made a mistake on May 7, 1993, when he administered the vaccinations: Either he incorrectly wrote down "DPT" in the Johnson Mead booklet, or he administered the DPT vaccine, rather than the MMR vaccine. Assessing Dr. Reilly's credibility and the evidence as a whole, the special master found that his mistake was more likely writing "DPT" in the booklet. The special master's finding that Mary received an MMR vaccination required her to consider the entire record, assess the credibility and demeanor of the witnesses, and ultimately weigh the evidence. "Such a determination of credibility is uniquely within the purview of the special master." *Burns*, 3 F.3d at 417 (citing *Richardson v. Secretary of DHHS*, 23 Cl.Ct. 674, 678 (1991)).

The court is sympathetic to Mary's condition and the Haggertys' plight. The record conveys the parents' devotion and sincerity. Nonetheless, because the special master did consider the relevant evidence of record, drew plausible inferences, and articulated a rational basis for her decision, her decision is not arbitrary, capricious, or an abuse of discretion and does not constitute reversible error. *Hines*, 940 F.2d at 1528.

## CONCLUSION

Accordingly, based on the foregoing, the decision of the special master is affirmed. The Clerk of the Court shall enter judgment for respondent in accordance with the decision of the special master.

**IT IS SO ORDERED.**